**STATE of Missouri, Respondent,**

v.

**Keith L. SMITH, Appellant.**

**Nos. WD 51604, WD 52937.**

Missouri Court of Appeals, Western District.

Aug. 19, 1997.

Jim C. Cox, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gregory L. Barnes, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and SPINDEN and SMART, JJ.

SMART, Judge.

Keith L. Smith appeals his conviction, after jury trial, for two counts of first degree assault, § 565.050, RSMo 1994 [1], and two counts of armed criminal action, § 571.015, for which he was sentenced, as a prior, persistent and class X offender, to four concurrent terms of fifteen years imprisonment. He also appeals the denial of his Rule 29.15 motion for post-conviction relief. Smith contends (1) the trial court erred in failing to submit Instructions "A" and "D" for the lesser included offense of assault in the second degree; (2) the trial court erred in allowing the State to argue, during closing argument, that being shot with a gun was "per se" serious physical injury; and (3) the motion court erred in denying Smith's 29.15 motion because trial counsel was ineffective in failing to call a witness who would have testified that Smith was working with him at the Old Folks' Lounge. The judgment of the trial court is affirmed. The judgment of the motion court is affirmed.

## FACTUAL BACKGROUND

Keith L. Smith was working as a bouncer at the Old Folks Lounge in Kansas City, Missouri. On the night of September 11, 1994, Earl Thornton and Anthony Washington went to the lounge and attempted to enter the club. When they reached the door, Smith attempted to search Washington for weapons. Washington objected to the search. Washington and Thornton were ejected by the other bouncer working with Smith, Ray Hollies. Washington and Thornton went back to Washington's house and found Washington's roommate, Dwayne Grayson, watching television. The three men decided to go to the Old Folks Lounge. Andre Grayson, Dwayne's cousin, had been inside the club. He came out of the club to see the group. As the four men were talking, Smith came out of the club with a .45 caliber gun and began shooting. Smith claimed that the gun did not belong to him but that he had taken it from a customer he searched just prior to the shooting.

Smith shot Thornton in the thigh and in his side. Thornton fell as a result of the shot and broke his leg. He was unconscious for a few moments, but when he opened his eyes he saw Smith pointing a gun at his head about to shoot him in the face. Smith pulled the trigger but the weapon did not fire because Smith was out of bullets. Andre Grayson was shot in the buttocks. Anthony Washington was shot in the thigh and Dwayne Grayson was shot in the abdomen and in the foot.

Smith admitted firing at the men, but claimed that he had seen Washington raise an object that Smith thought was a shotgun and point it at him. He also claimed that there were a number of guns going off that night. No other guns, shells or pellets were found at the scene. Several witnesses testified that they had seen no one with a gun other than Smith.

Smith was charged with first degree assault and armed criminal action for shooting all four men. The jury convicted Smith of first degree assault and armed criminal action in connection with the shooting of Thornton and of Andre Grayson. The jury acquitted Smith as to the shooting of Washington and of Dwayne Grayson.

Smith filed a *pro se* Rule 29.15 motion for post-conviction relief. On April 1, 1996, appointed counsel filed an amended motion. An evidentiary hearing was held on April 19, 1996. The motion court entered findings of fact and conclusions of law denying relief. Smith appeals both the judgment of conviction and the denial of his Rule 29.15 motion for post-conviction relief.

## INSTRUCTIONS ON LESSER INCLUDED OFFENSE

In his first point, Smith contends that the trial court erred in failing to submit Instruction "A" and Instruction "D", instructions patterned after MAI–CR3d 319.10, for the lesser included offense of assault in the second degree. Smith claims that there was evidence of sudden passion arising out of adequate cause which would have provided a basis for the submission of these instructions because the jury could have found that Smith

1. All statutory references are to Revised Statutes of Missouri 1994, unless otherwise indicated.

was provoked. Smith contends that when he saw the men returning to the club he was afraid that they would cause trouble because they had been thrown out of the club earlier. Smith says that he saw Washington raise a shotgun and point it at him. As a result, he claims, he was panicked and scared for his life.

Section 565.060 states, in pertinent part:

1. A person commits the crime of assault in the second degree if he:

(1) Attempts to kill or knowingly causes or attempts to cause serious physical injury to another person under the influence of sudden passion arising out of adequate cause;

. . . .

2. The defendant shall have the burden of injecting the issue of influence of sudden passion arising from adequate cause under subdivision (1) of subsection 1 of this section.

Section 565.002(1) defines "adequate cause" to mean "cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." The definition of "sudden passion" contained in § 565.002(7), defines that term as "passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation."

■ In the instant case, we find no evidence to support Smith's contention that the court should have instructed on the lesser included offense of assault in the second degree. The trial court is required to instruct on a lesser included offense if there is a basis for acquitting a defendant of the charged offense and convicting him on the lesser included offense and if such instruction is requested by one of the parties or by the court. *State v. Redmond,* 937 S.W.2d 205, 208 (Mo. banc 1996). Smith claims that he injected the issue of sudden passion arising out of adequate cause into the case when he intro-

duced evidence that there had been an earlier altercation between the victims and Smith, that the victims returned to the club, and that Washington raised a shotgun and pointed it at Smith. Smith, in his testimony at trial, recounted that he felt that his life was in danger.

■ Smith's testimony does not establish that he shot the victims out of sudden passion arising out of adequate cause. In *State v. Simmons,* 751 S.W.2d 85, 91 (Mo.App. 1988) [2], the Eastern District clarified the concepts of sudden passion and adequate cause, explaining:

The terms "sudden," "passion" arising out of "provocation" and "adequate cause" have been the source of interpretation in judicial decisions for decades. To be "adequate," the provocation must be of a nature calculated to inflame the passions of the ordinary, reasonable, temperate person. In order for an offense to be reduced to one less culpable, there must be a sudden, unexpected encounter or provocation tending to excite the passion beyond control. Passion may be rage or anger, or terror, but it must be so extreme that for the moment, the action is being directed by passion, not reason.

While Smith might have presented evidence of adequate cause (his testimony as to a shotgun pointed at him), the evidence does not show sudden passion needed to support the giving of an instruction on assault in the second degree. Smith testified that he had just taken a gun from a patron when he saw the victims coming down the street. The other bouncer on duty with Smith shut the door to the club and locked it. Smith testified that he was defending himself and the club when he shot at the four men. He testified that he was not trying to hurt the men, but that he was trying to defend himself and do his job. Smith testified that he had acted in self-defense and was not trying to hurt anybody. This presupposes a degree of control inconsistent with sudden passion.

---

**2.** *Redmond* partially overruled *Simmons* on other grounds. *Redmond,* 937 S.W.2d at 209–210. *Redmond* overruled *Simmons* only to the extent *Simmons* "could be read to hold that an instruc-

tion on self-defense and an instruction on sudden passion based on the same testimony are inherently inconsistent and should not be given together." *Id.*

■ The jury was instructed on self-defense. Instructions on self-defense and sudden passion are no longer considered mutually exclusive. *See Redmond,* 937 S.W.2d at 209–10. Each instruction must be evaluated separately. *Id.* at 210. Smith's testimony did not support submission of an instruction which hypothesizes that Smith acted under the influence of rage, anger or terror that was so extreme as to indicate that he had lost control. In this respect, this case is similar to *State v. Blackman,* 875 S.W.2d 122 (Mo. App.1994). In *Blackman,* the defendant shot and killed a police officer. He was found guilty of second degree murder. *Id.* at 127. The defendant tried to argue that an instruction on voluntary manslaughter (also requiring that a defendant be acting under the influence of sudden passion arising out of adequate cause) should have been given. Blackman claimed that he had injected the issue of sudden passion into the case by his statement that the victim shined a flashlight in his face, pushed his hands away when he attempted to shield his eyes, called him a racial epithet and fired a shot past his ear. *Id.* at 131. Blackman said he got angry. The defendant's claim was rejected on appeal. The court held that although the defendant said that he got angry, there was no evidence of extreme rage, anger or terror. *Id.* at 132. In this case, Smith's testimony that he was acting in self-defense, and did not want to hurt anyone, is inconsistent with second degree assault.

We also note that Smith was acquitted on the charges relating to the shooting of Dwayne Grayson and of Washington. Washington was the individual named by Smith as having had the shotgun. There was no evidence that Thornton or Andre Grayson were armed. There was no evidence that either of these two men provoked Smith. Furthermore, there was no evidence that Thornton or Andre Grayson acted with Washington in provoking Smith. The trial court did not err in refusing to give Instructions "A" and "D". Point I is denied.

## CLOSING ARGUMENT

In Point II, Smith claims that the trial court plainly erred in allowing the State to argue, during closing argument, that being shot with a gun was "per se" serious physical injury. Smith claims that this was a misstatement of the law and in direct conflict with the jury instructions. The prosecution argued:

There is plenty of evidence in this case that all four men were seriously physically injured. The gunshot wound *per se* is a serious physical injury. Two of the men were shot twice. They were all shot in their mid sections. They were all bleeding, they were all left to bleed, left to die if they did not get help. They did get help but they have all discussed with you the lasting effects of these gunshots on them. Earl Thornton has a rod in his leg and will have for the rest of his life and so does Andre Grayson.

■ Defense counsel did not object to the argument that Smith now contends was error. Review, therefore, would be only for plain error. "A court should rarely grant relief on assertions of plain error at guilt-phase closing because, absent an objection, the trial court's options are limited to an uninvited interference with summation, which increases the risk of error." *State v. Storey,* 901 S.W.2d 886, 897 (Mo. banc 1995). It is up to the defendant to demonstrate that a manifest injustice or miscarriage of justice will occur if the error is not rectified. *State v. Fowler,* 938 S.W.2d 894, 898 (Mo. banc 1997). Smith has not made such a showing. The evidence given by the victims of the assault shows that they sustained serious physical injury. Point II is denied.

## POST–CONVICTION APPEAL

In his appeal from the denial of his Rule 29.15 motion for post-conviction relief, Smith contends that the motion court clearly erred in denying him relief because counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would have exercised under similar circumstances when counsel failed to call John Williams to the stand to testify that Smith was working with him at the Old Folks Lounge on September 11, 1994. Smith maintains that this denial denied him the right to a fair trial, due process of law and to effective assistance of

counsel as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and as guaranteed by Article I, Sections 10 and 18(a) of the Missouri Constitution.

John Williams testified at the post-conviction hearing that he would have been willing to testify at trial that he worked with Smith at the Old Folks Lounge but that he had not been contacted by the defense. Smith claims that this evidence was important because the State repeatedly questioned whether Smith was working at the club. The motion court, in its findings and conclusions, stated:

> Regarding the allegation that trial counsel failed to investigate and call Mr. John Williams to testify on behalf of Movant, the Court finds that any such failure was not prejudicial to Movant. Mr. Williams testified in the evidentiary hearing April 19, 1996, that he would only have been able to testify at trial that Movant worked as a bouncer at the Old Folks' Lounge. He did not see any part of the shooting. Furthermore, Mr. Williams has a conviction for armed robbery. Four of the State's witnesses as well as the defense witnesses all testified that Movant was working as a bouncer the night of the shooting. The issue was uncontested. The Court finds that Mr. Williams would not have aided in Movant's defense in any way.

This court's review of the motion court's findings and conclusions is limited to a determining whether those findings and conclusions are clearly erroneous. *State v. Driver*, 912 S.W.2d 52, 54 (Mo. banc 1995); Rule 29.15(k). The motion court's findings and conclusions will be deemed clearly erroneous when, after review of the entire record, we are left with the definite and firm impression that a mistake was made. *State v. Johnson*, 901 S.W.2d 60, 62 (Mo. banc 1995).

Smith, in order to prevail upon a claim of ineffective assistance of counsel for failure to call a witness, must show: (1) that trial counsel knew or should have known of the existence of the witness; (2) that the witness could be located through reasonable investigation; (3) that the witness would testify; and (4) that the testimony of the witness would have produced a viable defense. *State v. Harris*, 870 S.W.2d 798, 817 (Mo. banc 1994). Here, the testimony that Smith claims was vital to his defense was merely cumulative to other evidence already in the case. The failure to present cumulative evidence is not ineffective assistance of counsel. *State v. Nunley*, 923 S.W.2d 911, 924 (Mo. banc 1996), *cert. denied*, — U.S. —, 117 S.Ct. 772, 136 L.Ed.2d 717 (1997). The motion court's finding that this testimony could not have materially helped defendant in any way is not clearly erroneous. Point III is denied.

The judgment of the trial court is affirmed. The judgment of the motion court is affirmed.

BERREY, P.J., and SPINDEN, J., concur.