Tommy **DORSEY**, Defendant–
Appellant,

v.

**STATE of Missouri**, Plaintiff–
Respondent.

No. 25312.

Missouri Court of Appeals,
Southern District,
Division One.

Aug. 29, 2003.

**312**

Ellen J. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Assistant Attorney General, Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

Tommy Dorsey ("Dorsey") appeals from the motion court's denial, without an evidentiary hearing, of his Rule 29.15 [1] motion to vacate, set aside, or correct his conviction of second-degree assault and the resulting sentence of nine years imprisonment. He alleges in three points that the motion court erred in denying the motion because he alleged facts therein which, if proved, would warrant relief in that he received ineffective assistance of counsel in derogation of his constitutional rights. We disagree and affirm the motion court's judgment.

Early in the morning of January 16, 2000, Dorsey entered the Express Lane convenience store at 715 West College in Springfield, Missouri ("the store") to purchase cigarettes and pre-pay for gasoline. In the store at the time were the clerk and Karl Leigh ("Leigh"), a professional truck driver. As Leigh and the clerk chatted, Dorsey approached and asked what was indicated.

---

1. References to rules are to Missouri Rules of Criminal Procedure (2002) unless otherwise

the price of a pack of cigarettes. In response to the announced price, Dorsey exclaimed, "Well, that's highway robbery." Leigh took exception to that remark, stating that the clerk probably did not appreciate any use of the word "robbery," given that the store had been robbed several times recently. Dorsey began cursing at Leigh and told him he should stay out of his business.

After Dorsey finished paying for the cigarettes and gas, he walked past Leigh on the way out the door and struck his shoulder with his fist. This resulted in a struggle that left Dorsey pinned to the ground by Leigh, who let Dorsey get up when Dorsey promised to leave the store peacefully if he was allowed to do so. Dorsey left the store and pumped the gas for which he had prepaid. He then returned to the entrance to the store to ask for the name of the store's manager, claiming that he intended to go to the hospital and sue the store for any medical bills arising from injuries sustained during the previous scuffle. The clerk called the police while Leigh blocked Dorsey's attempts to enter the store.

Leigh then left the store to confront Dorsey and another fight erupted between the two. Leigh heard a noise like "keys by [his] ear" before noticing he was bleeding from severe cuts to his cheek, neck, and arm. The cuts were apparently caused by a small pocketknife wielded by Dorsey and attached to a set of keys he was "swinging" in the course of his fight with Leigh. Leigh backed away from Dorsey and exclaimed, "Man, you cut me." When Dorsey appeared to be attempting to escape, Leigh advanced toward him again to restrain him. When the police arrived, Dorsey was arrested and the knife and keys were confiscated.

Dorsey was charged by information as a prior, persistent, and dangerous offender with assault in the first degree, a violation of Section 565.050.[2] On October 30, 2000, Dorsey appeared before the trial court and indicated, in person and in writing, that he wished to waive a jury trial. After an examination by the court, the court found that Dorsey had freely, voluntarily and knowingly waived his right to trial by jury. Dorsey indicated he wished to withdraw his waiver of a jury trial at the beginning of a bench trial that was held on April 20 and April 23, 2001. Dorsey expressed displeasure with his trial counsel and told the trial court that his prior waiver of a jury trial was tainted in that his counsel had convinced him to do so by telling him that the jury pool in Greene County was racist and this would prevent Dorsey, an African–American, from receiving a fair trial. After some consideration of Dorsey's request, the trial court denied it and the bench trial proceeded. At the close of evidence, Dorsey was found guilty of the lesser-included offense of assault in the second degree. He was sentenced at a later hearing to nine years imprisonment as a prior, persistent, and dangerous offender.

On March 29, 2002, we affirmed the trial court's judgment and sentence by summary order pursuant to Rule 30.25(b). *State v. Dorsey*, No. 24331 (Mo.App.S.D. March 29, 2002). On May 14, 2002, Dorsey filed a *pro se* motion for post-conviction relief pursuant to Rule 29.15, which was amended by Dorsey's attorney on August 29, 2002. On November 19, 2002, the motion court denied the motion without an evidentiary hearing. This appeal follows.

■ Our review of the denial of a Rule 29.15 motion is limited to a determination whether the findings of fact and conclu-

---

**2.** References to statutes are to RSMo (2000) unless otherwise indicated.

sions of law of the motion court are "clearly erroneous." Rule 29.15(k); *State v. Simmons*, 944 S.W.2d 165, 181 (Mo. banc), *cert denied*, 522 U.S. 953, 118 S.Ct. 376, 139 L.Ed.2d 293 (1997). The motion court's findings are clearly erroneous only if, upon our review of the entire record, we are left with the firm impression that a mistake has been made. *Knese v. State*, 85 S.W.3d 628, 631 (Mo. banc 2002); *Barnett v. State*, 99 S.W.3d 21, 23 (Mo.App. S.D.2003).

Each of Dorsey's three points on appeal alleges, in part, that he received ineffective assistance of counsel. Such claims are subject to the two-prong test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, it must be shown that the appellant's trial counsel failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances. *Id.* at 687, 104 S.Ct. 2052; *see also Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987). Second, if the performance of appellant's trial counsel was deficient, it must also be shown that the appellant was prejudiced by the deficiency. *Strickland* at 689, 104 S.Ct. 2052; *Sanders* at 857. This "prejudice" prong of the test is satisfied when there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different. *Strickland* at 694, 104 S.Ct. 2052. "Reasonable probability" is the "minimum standard in undermining confidence in the outcome of the case." *Moore v. State*, 827 S.W.2d 213, 215 (Mo. banc 1992). If the appellant fails to satisfy one of the two prongs of the *Strickland* test, we are not compelled to address the other prong and the claim of ineffective assistance must fail. *State v. Nunley*, 980 S.W.2d 290, 292 (Mo. banc 1998), *cert. denied*, 526 U.S. 1100, 119 S.Ct. 1580, 143 L.Ed.2d 674 (1999).

In addition to the claim that Dorsey received ineffective assistance of counsel, a second common element of each of his three points on appeal is that the motion court erred in denying his Rule 29.15 motion without an evidentiary hearing pursuant to Rule 29.15(h) because the motion pleaded facts which, if true, would warrant relief and which are not refuted by the record. Indeed, to be entitled to relief, a Rule 29.15 movant must allege facts, not conclusions, which, if true, would warrant relief. *State v. Starks*, 856 S.W.2d 334, 336 (Mo. banc 1993); *Rollins v. State*, 974 S.W.2d 593, 595 (Mo.App. W.D.1998); Rule 29.15(h). These allegations of fact must not be refuted by the record and matters complained of must have resulted in prejudice to the movant. *Starks* at 336.

In Dorsey's first point, he alleges the motion court clearly erred in denying the motion without an evidentiary hearing because he received ineffective assistance of trial counsel in that his trial counsel "unreasonably advised [Dorsey] to waive a jury because he said that juries in Greene County were racist." Dorsey claims that "[h]ad counsel not given [him] this advice, [Dorsey] would have proceeded to a jury trial and there is a reasonable probability that the result would have been different."

On October 30, 2000, Dorsey appeared before the trial court and waived, in person and in writing, his right to a jury trial. In affirming his conviction on direct appeal, we found Dorsey's waiver to be voluntary. *State v. Dorsey*. Notwithstanding that holding, Dorsey now claims that the record does not refute his claim of ineffective assistance of counsel in this regard because on the day of trial, Dorsey requested that he be allowed to withdraw his waiver of a jury because he had determined the prior renunciation of that right was tainted by the advice given him by his

trial counsel. Specifically, Dorsey expressed new skepticism with his attorney's advice that Dorsey "could [not] get a fair trial to [sic] this community ... because of the ratio of the people." Dorsey told the trial court that "since then I have talked to, you know, other people, and they recommended that I have a jury trial because the community would be able to pick a jury that would find me not guilty."

We disagree with Dorsey's assertion that his trial counsel's advice to waive a jury trial due to the racial makeup of the jury pool rises to the level of deficient performance under a *Strickland* analysis. "In evaluating the performance of counsel under the first prong of the *Strickland* test, we note that actions by counsel that constitute sound trial strategy are not grounds for ineffective assistance claims. There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998) (internal citations omitted); *see Strickland* at 689–90, 104 S.Ct. 2052.

■ The western district of this court has held that a trial attorney's advice to an African–American client charged with sodomy that he waive jury trial to avoid the risk of a harsher jury sentence because his victim was a minor and white constituted valid trial strategy which did not rise to the level of deficient performance. *Smith v. State*, 837 S.W.2d 25, 27–28 (Mo.App. W.D.1992). Similarly, Dorsey's trial counsel apparently advised Dorsey, as a matter of trial strategy, to waive jury trial due in part to Dorsey's race. Without passing upon the accuracy or wisdom of this advice, we find, considering Dorsey's valid waiver based upon his counsel's advice, and in light of *Hall* and *Smith*, that this advice constituted trial strategy and not

deficient performance. Having determined that counsel's performance was not deficient as claimed in Dorsey's first point, we need not address the prejudice prong of the *Strickland* test. Point one is denied.

In his second point, Dorsey assigns clear error to the motion court in denying his Rule 29.15 motion without an evidentiary hearing because he received ineffective assistance of trial counsel in that his trial counsel "unreasonably failed to investigate having an expert enhance the audio [portion] of the [store security] videotape to show a racial motive for the victim to have confronted [Dorsey], prejudicing [him], since this would have supported his defense at trial."

Dorsey's amended motion contended that an audio enhancement of the store surveillance tape, the original version of which was played at trial, revealed that following the initial confrontation between Dorsey and Leigh, Leigh had used the phrase "stupid niggers," and that only then did the second scuffle ensue. The motion further alleges that this comment, if presented at trial, would have lent credence to Dorsey's argument at trial that he swung his keys at Leigh only after the racially-charged comment was made and that it would have bolstered Dorsey's credibility and his claim of self-defense.

The motion court, in addressing Dorsey's argument regarding the audio enhancement of the surveillance tape, stated the following:

[Dorsey] alleges that if trial counsel had enhanced the audio portion of the videotape, it would have revealed that [Leigh] had referred to "stupid niggers" when discussing with the store clerk the first altercation which [sic] had taken place with [Dorsey]. According to the testimony at trial, [Dorsey] was not present during this conversation be-

tween the clerk and [Leigh]. [Dorsey] makes no allegation in his pleading, and made no allegation to the police, that he heard such racial epithets being used in the conversation in the store or during the first altercation. His sole contention is that the comment would have "buttressed the reasonableness of [Dorsey's] self[-] defense claim by establishing a racial animus informing ... Leigh's actions." [Dorsey] did not make a self-defense claim at trial and would not have been entitled to a claim of self-defense even if his assertion of ... [Leigh's] use of racial epithets were true. Mere insults are not sufficient provocation to justify an assault or make the speaker the aggressor. *State v. Harris*, 717 S.W.2d 233 (Mo.App. E.D. 1986). In order to be entitled to self[-]defense, the defendant must not use more force than what appears reasonably necessary and mere battery would not justify the use of a weapon against an unarmed assailant. *See e.g., State v. Dulaney*, 989 S.W.2d 648 (Mo. App. W.D.1999); *State v. Albanese*, 920 S.W.2d 917 (Mo.App. W.D.1996); *State v. Morley*, 748 S.W.2d 66, 68 (Mo.App. S.D.1988).

Even if the comments had been audible on the tape, they would have gone only to the issue of "sudden passion" for purposes of reducing the level of assault to second degree. The [c]ourt, in fact, found such sudden passion and found the defendant not guilty of assault in the first degree and guilty of assault [in the] second degree by reason of his finding of sudden passion. [Dorsey], therefore, was not prejudiced by counsel's failure to have the tape audio enhanced.

▉ Based on the foregoing, we are not of the opinion that Dorsey alleged facts in his motion that, if true, would warrant relief. *See Starks* at 336; Rule 29.15(h). First, the motion did not state when the alleged test on or enhancement of the videotape was performed, leaving the motion court with no factual allegation that Dorsey's trial counsel was aware at the time of trial of the presence of any racially-charged comments by Leigh on the tape. The reasonableness of an attorney's actions is to be evaluated from the perspective of the attorney at the time of the challenged conduct. *Burton v. State*, 68 S.W.3d 490, 493 (Mo.App. E.D.2001); *Edwards v. State*, 772 S.W.2d 703, 704 (Mo.App. E.D.1989) (movant not entitled to an evidentiary hearing based upon allegation that counsel was ineffective for failing to call a witness of whom counsel was not aware).

▉ Second, Dorsey acknowledges in his amended motion that evidence of the comments allegedly made by Leigh and captured on the surveillance video would be cumulative of Dorsey's testimony at trial that the second altercation took place after Leigh made racially-charged remarks. Failure to present cumulative evidence does not constitute ineffective assistance of counsel in the context of a post-conviction appeal. *Winfield v. State*, 93 S.W.3d 732, 740 (Mo. banc 2002).

▉ Finally, as the motion court correctly noted, whether Dorsey's claim regarding the video enhancement would have buttressed an argument of self-defense is immaterial, since Dorsey did not raise such a defense at trial, nor would he have been entitled to such a defense. Specifically, the motion court held that "[Dorsey] did not make a self-defense claim at trial and would not have been entitled to a claim of self-defense even if his assertion of ... Leigh's use of racial epithets were true. Mere insults are not sufficient to justify an assault or make the speaker the aggressor. *State v. Harris*, 717 S.W.2d 233 (Mo.App. E.D.1986)." To the extent any alleged

racial epithets uttered by Leigh would have been relevant at trial, they would have gone to establishing the presence of "sudden passion" sufficient to mitigate Dorsey's guilt from first-degree assault to second-degree assault, a finding the trial court made without the benefit of such evidence. In that regard, Dorsey was not prejudiced by the failure of his trial counsel to obtain and present at trial an enhancement of the audio portion of the surveillance tape. In any event, Dorsey did not allege facts in the motion sufficient to demonstrate that his counsel's performance was deficient. His second point is, therefore, denied.

In his third and final point, Dorsey alleges the motion court clearly erred in denying his Rule 29.15 motion without an evidentiary hearing because he received ineffective assistance of trial counsel in that his trial counsel "unreasonably conceded to the trial court that the defense was not self-defense during closing arguments. [Dorsey] was prejudiced in that he in fact was acting in self-defense."

In his closing argument at trial, Dorsey's trial counsel argued that "[t]hose injuries [suffered by Leigh], it is [Dorsey's] position, were caused by him defending himself from ... Leigh." The State objected, arguing that the statement constituted reference to a self-defense argument that had not been raised in the presentation of Dorsey's defense and to which he was "not entitled." The trial court, in overruling the objection, stated that "there[ ][had] been no self-defense raised. But since this is a[c]ourt-tried case, I'll go ahead and let you argue your argument."

Dorsey now argues that his trial counsel was ineffective for failing to "correct" the court by asserting that he, in fact, was presenting a self-defense argument. Dorsey apparently takes the trial court's comment "[t]here's been no self—defense

raised" to mean that had his trial counsel "corrected" this supposed misunderstanding of the nature of his defense, the trial court would have considered such a defense and the result of the trial would have been different.

■ This argument is fatally flawed. In order to support a claim of self-defense, there must be evidence of absence of aggression or provocation by the defender and an attempt by the defender to do all within his power consistent with his personal safety to avoid danger. *State v. McCarty*, 956 S.W.2d 365, 369 (Mo.App. S.D.1997). The use of deadly force in self-defense requires the real or apparently real necessity for the defender to kill or use deadly force to protect himself from immediate danger of serious bodily injury or death. *Id.; see* Section 563.031. Deadly force cannot be used to repel a simple assault and battery. *State v. Morley*, 748 S.W.2d 66, 68 (Mo.App. S.D.1988).

■ Dorsey's admitted actions fail to meet the threshold requirements for allowing a justification defense. As noted by the motion court, Dorsey

> at some point, introduced a ... deadly instrument into what had been[,] at most[,] a simple battery and significantly raised the level of violence. There is no indication that [Leigh] ever possessed or threatened [Dorsey] with a weapon or that [Dorsey] reasonably considered himself at risk of serious physical injury or death. The only apparent injury to [Dorsey] was a swollen lip.... On the other hand, [Leigh] suffered profound and permanent scarring from slashes and stab wounds to his face, arms and shoulder and suffered numbness in his cheek even at the time of trial.

Thus, the motion court correctly surmised that Dorsey was not entitled to a justifica-

tion defense, regardless of whether the trial court was correct in stating that such a defense had not been raised.

Dorsey asserts that the motion court's finding, and our finding on direct appeal, that he was not, as a matter of law, entitled to a self-defense argument is irrelevant on this appeal because the issue here is whether the trial court would have allowed reference to such a defense in closing arguments had Dorsey's counsel advised the trial court that such a defense had been offered. We cannot, however, find trial counsel's performance deficient because he failed to protect his right to assert a defense to which his client clearly was not entitled as a matter of law. Given the trial court's stated—and correct—conclusion that Dorsey was not entitled to a justification defense, his counsel was far from deficient in his performance when he made the strategic decision not to seek an acquittal based on such an argument.

Moreover, while we are not compelled to address the prejudice prong of Dorsey's argument given our inability to find his counsel ineffective under this point, we note that we fail to discern how Dorsey could possibly had been prejudiced by his counsel's failure to "correct" the trial court concerning the alleged nature of his defense when the trial court, notwithstanding its statement that self-defense had not been raised, nevertheless allowed counsel to present such an argument in his closing statement and still found Dorsey guilty. Dorsey offers no authority for the curious proposition that one may be prejudiced by a trial court's gratuitous allowance of an argument the court found not to have been raised and that the motion court, and this court on direct appeal, held to be outside the bounds of what Dorsey was entitled by law to present. Dorsey's final point must, therefore, be denied.

The judgment of the motion court is affirmed.

MONTGOMERY, P.J., and BARNEY, J., concur.