STATE of Missouri, Plaintiff–
Respondent,

v.

Edward H. BURKS, Defendant–
Appellant.

No. 27747.

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 10, 2007.

Motion for Rehearing or Transfer
Denied Oct. 2, 2007.

Application for Transfer Denied
Nov. 20, 2007.

Craig A. Johnston, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Dora A. Fichter, Jefferson City, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Edward H. Burks, III ("Appellant"), appeals his conviction for the class A felony of assault in the first degree, section 565.050, and armed criminal action, section 571.015.[1] Appellant was found guilty in a jury trial and sentenced to consecutive terms of imprisonment of twenty-five years and ten years, respectively. Appellant raises two points on appeal, both challenging the sufficiency of the jury instruction: (1) that the trial court erred in refusing to instruct the jury on assault in the second degree and failing to include an instruction on sudden passion, and (2) that the trial court erred in refusing to instruct the jury on self-defense. We find no error and affirm the judgment.

David Kantner owned Gravy's Lounge, a karaoke bar in Springfield, Missouri. He was present there the evening of October 26, 2004, and just after midnight on October 27, 2004, when he saw what appeared to be a man, later identified as Appellant, hitting a woman, later identified as Nicole Crump, in the parking lot. Mr. Kantner, accompanied by friend and regular customer Randy Inman, left the bar, went out to the parking lot, and approached Appel-

1. All references to statutes are to RSMo (2000) unless otherwise indicated.

lant. As they walked toward Appellant, Ms. Crump got up and ran away. Mr. Kantner told Appellant to stop hitting Ms. Crump. Appellant answered Mr. Kantner with profanity and told him that what happened was none of his business. Mr. Kantner replied that he owned the bar, that Appellant should not be hitting women in his parking lot, and asked Appellant to leave.

Mr. Kantner grabbed for Appellant's throat but, because Appellant tried to knock his hand away, was only able to grab his collar. Appellant and Mr. Kantner began shoving and pushing each other. Both swung punches towards each other but did not connect. Mr. Inman attempted to get involved in the fight but as soon as he touched Appellant, Michael Klotz, an acquaintance of Appellant, grabbed him and pushed him to the ground. Sometime during or immediately after this scuffle, Mr. Kantner was stabbed with a knife in his back below his left shoulder.

Mr. Inman got up, pushed Appellant away from Mr. Kantner, and helped Mr. Kantner back into the bar. Appellant got into his car and left the parking lot. He was later apprehended by the police. At trial, Appellant denied possessing a knife and stabbing Mr. Kantner.

Regarding the jury instructions, which are the basis of this appeal, Appellant proffered Instructions A and C. Instruction C, in the form provided by MAI–CR 3d 319.04, submitted assault in the second degree, and Instruction A, in the form provided by MAI–CR 3d 319.02, was the proposed verdict director for assault in

the first degree with an additional paragraph requiring the jury to find Appellant "did not act under the influence of sudden passion arising out of adequate cause." [2] Appellant objected to the State's verdict director that did not contain a sudden passion paragraph. The trial court refused to submit Appellant's instructions A and C.

■ Appellant presents two arguments in his first point contending that the trial court erred: (1) in refusing to instruct the jury on assault in the second degree and (2) in failing to modify the verdict director with a sudden passion instruction. Both contentions are premised on the assertion that the evidence showed that Appellant was acting under sudden passion arising out of adequate cause. Therefore, the relevant question here is whether there was sufficient evidence by which the jury could have found that Appellant acted under the influence of sudden passion arising out of adequate cause. *State v. Deprow*, 937 S.W.2d 748, 750 (Mo.App. S.D.1997). These terms are defined in section 565.002 as follows:

(1) "Adequate cause" means cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control.

. . . .

(7) "Sudden passion" means passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation.

---

**2.** "Notes on Use," paragraph 4, of MAI–CR 3d 319.02, states:

Assault in the first degree is "mitigated" to assault in the second degree when the defendant acted under the influence of sudden passion arising out of adequate cause. Section 565.060.1(1), RSMo 2000. The defendant has the burden of injecting this issue. Section 565.060.2, RSMo 2000. Paragraph (Second) on this issue should not be used unless supported by evidence of this mitigating factor. Once such evidence has been introduced, paragraph (Second) must be used. Further, MAI–CR 3d 319.04 submitting assault in the second degree shall be given upon request of a party or on the Court's own motion.

We will not disturb a trial court's refusal to submit an instruction to the jury absent a showing of an abuse of discretion. *State v. Hashman*, 197 S.W.3d 119, 127 (Mo.App. W.D.2006). Even if we find error in a trial court's refusal to give an instruction, we will reverse only if such error was prejudicial to the defendant. *Id.* "In determining whether the refusal to submit a jury instruction was error, the evidence is viewed in the light most favorable to the defendant." *Id.* " 'If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it.' " *Id.* (quoting *State v. Avery*, 120 S.W.3d 196, 200 (Mo. banc 2003)). Therefore, in this case, a specific instruction on sudden passion, or an instruction on lesser included offenses based on a finding of sudden passion, would be required only if the trial court could find that the evidence did in fact tend to establish that Appellant acted under the influence of sudden passion arising out of adequate cause.

Where Missouri courts have found sudden passion during confrontations there has been evidence of weapons being brandished and/or other minor contact combined with an exchange of words that would create a fear of great bodily harm in the defendant. *See State v. Creighton*, 330 Mo. 1176, 52 S.W.2d 556, 557, 560–62 (1932) (indicating that sudden passion can arise where defendant is surprised by an unexpected provocation and where victim made threats of great bodily harm and then reached for his pocket causing defendant to fear great bodily harm); *see also State v. Redmond*, 937 S.W.2d 205, 208–09 (Mo. banc 1996) (supporting a finding of sudden passion where victim confronted defendant in a threatening manner and displayed a gun and the defendant was scared for his life); *see also State v. Fears*, 803 S.W.2d 605, 608–09 (Mo. banc 1991)

(supporting a finding of sudden passion from an altercation where victim prevented defendant from leaving and made threats that created a fear of great bodily harm in the defendant).

Here, the evidence clearly indicates that Appellant was not caught by surprise as he and his girlfriend saw Mr. Kantner and Mr. Inman walk out of the bar and across the parking lot. Further, there is no evidence that the yelling that occurred during the altercation included threats of great bodily harm. Finally, there is no evidence that Mr. Kantner had possession of, or even pretended to have possession of, a weapon that would cause Appellant to fear great bodily harm. Therefore, these events alone cannot be said to give rise to sudden passion.

Viewing these same facts under an alternate accepted definition of sudden passion, it remains clear that there is no evidence of events that would cause Appellant to act under the influence of sudden passion. Passion may be rage, anger, or terror, but it must be so extreme that, for the moment, the action is directed by passion and not reason. *State v. Smith*, 949 S.W.2d 947, 950 (Mo.App. W.D.1997). There is no evidence in this case to establish that Appellant's actions were controlled by emotion and not reason. While the evidence indicates that many words were exchanged, many punches were thrown, and at some point Mr. Kantner grabbed Appellant's collar and held onto him, there is no evidence that indicates any of this caused Appellant to be so enraged or terrified that he no longer acted with reason.

The evidence relied on by Appellant to support a finding of sudden passion is based on what Appellant thought was going to occur. Specifically, Appellant stated that as he saw the men coming towards him, he was thinking "[s]omebody's going to try and beat me up" and, as the alterca-

tion continued, Appellant "figured that if [Mr. Kantner] drug me to the ground that [Mr. Kantner and Mr. Inman] were going to kick the snot out of me." Appellant also argues that because the fight was "two-on-one," the court could more easily find sudden passion. While these statements are relevant to Appellant's state of mind, they do not tend to establish that Appellant was overcome by passion so as to lose his ability to reason. Appellant's statements indicate that his state of mind was clear enough to be aware of his surroundings, to consider his options, and to predict what may or may not occur in the next minutes. We find, from the evidence presented, that there was not a sufficient amount of evidence presented to establish that Appellant's acts were influenced by sudden passion caused by adequate provocation. Point I is denied.

■ Appellant's second point contends that the trial court erred in refusing to instruct the jury on self-defense. Specifically, Appellant contends that the trial court erred in refusing to instruct on self-defense, section 563.031, because there was substantial evidence putting that defense in issue and thus the trial court's refusal violated his rights. As such, the evidence shows Appellant used a knife estimated to be three or four inches long. As this weapon would constitute a dangerous instrument, the special self-defense instruction on use of deadly force would be required only if the court finds substantial evidence of the four elements that must be present to allow the use of deadly force in self-defense. As set forth in *State v. Chambers*, 671 S.W.2d 781, 783 (Mo. banc 1984), the four required elements are:

(1) an absence of aggression or provocation on the part of the defender, (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death, (3) a reasonable

cause for the defender's belief in such necessity, and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life.

■ The use of deadly force requires a "real or apparently real necessity for the defender to kill or use deadly force to protect himself from immediate danger of serious bodily injury or death." *Dorsey v. State*, 113 S.W.3d 311, 317 (Mo.App. S.D. 2003). Deadly force is a force that the actor uses with the purpose of causing, or which the actor knows to create, a substantial risk of death or serious physical injury. Section 563.011(1); *see State v. Miller*, 981 S.W.2d 623, 632 (Mo.App.W.D. 1998).

■ Appellant argues that he had a reasonable belief that deadly force was necessary to protect himself against immediate danger of serious physical injury because it was a "two-on-one" fight, and Appellant was worried that, if Mr. Kantner drug him to the ground, they would "kick the snot out of" him. Deadly force, however, cannot be used to repel simple assault or battery. *Dorsey*, 113 S.W.3d at 317 (indicating that where defendant introduced a deadly weapon, a pocket knife, into a simple fight during which defendant was not injured, defendant was not entitled to a self-defense instruction).

A court could not find the required "substantial evidence" that deadly force was necessary to prevent serious bodily harm in this case. More specifically, there is no evidence that Appellant was ever in fear of serious bodily harm or death. Appellant testified that he "was thinking" somebody was going to beat him up and that he "figured" someone would "kick the snot" out of him. At no time did Appellant testify he was aware of certain and imminent serious bodily injury. Additionally, while Appellant relies on his knowledge that the fight was "two-on-one" to support

a reasonable fear of immediate and serious physical injury, the record clearly reflects that Appellant had help during the altercation from his friend, Mr. Klotz, who grabbed Mr. Inman before he was able to join in the fight and removed him from the situation completely.

Appellant also testified that, during the initial punches that were thrown, no contact was ever made. The only contact against Appellant came when Appellant was successfully able to thwart Mr. Kantner's attempt to grab for his throat so that Mr. Kantner was only able to grab Appellant's collar. Therefore no physical contact ever occurred that could be considered evidence that might cause Appellant to believe he was in immediate danger of serious physical injury.

Finally, during testimony at trial, Appellant described Mr. Kantner—whose attack allegedly caused imminent fear of serious physical injury—as a "little bald guy." Although this comment alone would clearly not be dispositive of this issue in determining if Appellant should have been in fear of great bodily harm or not, it is relevant to note the state of mind of Appellant. Here, this comment indicates that when Appellant saw Mr. Kantner coming at him he was not being approached by a large man that towered over him, but was simply approached by a "little bald guy" who, presumably, would not incite the same level of fear.

The evidence presented substantially indicates that Appellant was in control of the situation as he was able to avoid punches and injury altogether. Further, the evidence simply does not indicate that Appellant had a real or apparent necessity to use deadly force against the "little" guy attacking him.[3] For these reasons, the trial court did not err in refusing to submit instructions on self-defense to the jury. Point II is denied.

The judgment is affirmed.

PARRISH, J., concurs as to Point I and concurs in the result reached.

SCOTT, J., concurs in result in separate opinion.

---

3. The concurring opinion posits only "plain error" review is warranted. Citing *State v. Shockley*, 98 S.W.3d 885 (Mo.App. S.D.2003) (a case where defendant failed to object at trial or in a motion for new trial), for the general proposition that instructional error is rarely plain error, the concurring opinion claims the case should be decided on a "plain error" analysis. That is an accurate statement concerning instructional error; however, where self-defense is injected into the case, the trial court is required to instruct on self-defense, "even in the absence of a request for such an instruction, and even if such an instruction was offered but not in proper form." *State v. Westfall*, 75 S.W.3d 278, 281 n. 9 (Mo. banc 2002) (where the court held that failure to instruct on self-defense, after it was injected into the case, was plain error affecting substantial rights even though Appellant failed to properly preserve the error); *see also State v. January*, 176 S.W.3d 187 (Mo.App. W.D.2005)(where appellant failed to object to the failure to instruct on the issue of her claim-of-right defense, which affected her substantial rights, and the court held she did not waive plain error review); *State v. Goucher*, 111 S.W.3d 915 (Mo.App. S.D.2003)(where defendant acknowledged that the error was unpreserved the court held that failure to instruct on an issue affecting substantial rights was plain error); *State v. White*, 222 S.W.3d 297 (Mo.App. W.D.2007)(holding that a jury instruction on self-defense is required when substantial evidence is presented to support it, regardless of whether it was requested or not, and failure to give the instruction is plain error). It is clear, "even if no objection is made, the failure to instruct upon a defense supported by the evidence is plain error affecting substantial rights." *Westfall*, 75 S.W.3d at 281. Whether plain error review or a properly preserved claim of error, the proper analysis results in a review of the evidence to determine if "substantial evidence" supported the giving of a self-defense instruction.

DANIEL E. SCOTT, Judge, concurring.

I concur in the result and in the disposition of Point I. I believe, as Appellant's brief intimates, that Point II was not preserved. I would review Point II for plain error. Instructional error is rarely plain error,[1] and as the court's opinion notes, Appellant was not entitled to use deadly force to repel a simple battery.[2] Appellant has not shown the manifest injustice or miscarriage of justice required for plain error relief. I fully agree the conviction should be affirmed.

1. *State v. Shockley,* 98 S.W.3d 885, 891 (Mo. App.2003).

2. *Dorsey v. State,* 113 S.W.3d 311, 317–18 (Mo.App.2003).