

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99044 |
| | ) | |
|     Respondent/Cross-Appellant, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
|     vs. | ) | |
| | ) | Honorable Julian Bush |
| ELVIS SMITH, | ) | |
| | ) | |
|     Appellant. | ) | Filed: April 29, 2014 |

### *Introduction*

Elvis Smith (Defendant) appeals the judgment of conviction entered by the Circuit Court of the City of St. Louis after a jury found him guilty of murder in the first degree and armed criminal action. Defendant claims that: (1) the trial court erred in refusing to submit his self-defense instruction on murder and assault; and (2) the trial court's written judgment contains a clerical mistake that Defendant pleaded guilty to murder and armed criminal action. The State cross-appeals, asserting that the trial court erred in granting Defendant's motion for judgment of acquittal on assault and armed criminal action in connection with the assault. We affirm and remand for correction of judgment *nunc pro tunc*.

### *Factual and Procedural Background*

Viewed in the light most favorable to the verdict, the evidence at trial revealed the following: On May 21, 2011, Defendant sold Mr. Williams a small amount of heroin, but Mr.

Williams refused to pay him. That same day, Defendant told Jesse White that he "was going to get [Mr. Williams]."

The next day, Defendant and Wilber Hardwict, Defendant's drug supplier, encountered Mr. Williams, a man named Josh,[1] and David Thomas in the Peabody housing project. Defendant asked Mr. Williams if he had the money he owed for the heroin, and Mr. Williams responded, "What you want to do, fight?" Defendant pulled out a gun and Mr. Williams grabbed Josh to use as a shield. Mr. Williams pushed Josh at Defendant and ran in a zigzag pattern until he stopped to hide between two dumpsters. While Mr. Williams ran, Defendant fired his gun three to four times.

One of the shots Defendant fired struck Jnylah Douglas (Victim) in the head while she was playing on a nearby playground. Victim died a few weeks later from the gunshot wound.

The State charged Defendant with one count of murder in the first degree, one count of assault in the first degree, two counts of armed criminal action, and one count of unlawful possession of a firearm.[2] In Count I, the State charged that "[Defendant] after deliberation, knowingly caused the death of [Victim] by shooting her when he was shooting at [Mr. Williams]." Count II provided that "[Defendant] shot at [Mr. Williams], and such conduct was a substantial step toward the commission of the crime of attempting to kill or cause serious physical injury to [Mr. Williams], and was done with the purpose of committing such assault."

The trial court held a four-day jury trial. The State presented the testimony of several witnesses including Detective Dan Fox from the St. Louis Metropolitan Police Department,

---

[1] Josh was also referred to as "Jay" and "Jake" at trial.
[2] The trial court granted Defendant a judgment of acquittal on the felon in possession of a firearm charge at the close of all evidence on the basis that the State presented insufficient evidence to support a conviction.

eyewitnesses Juan House, David Thomas, and Penny Griffin, Jesse White, and Mr. Williams. Defendant testified in his own defense.

Following the close of all evidence, Defendant moved for a judgment of acquittal on either murder in the first or second degree or assault in the first degree on the grounds that convictions for both would violate double jeopardy. The court denied Defendant's motion but reserved for reconsideration Defendant's double jeopardy argument before entering judgment.

At the instruction conference, Defendant proffered a self-defense instruction for murder and assault. The State objected to the submission of a self-defense instruction, and the trial court sustained the State's objection.

The jury found Defendant guilty of murder in the first degree, assault in the first degree, and both counts of armed criminal action. Defendant filed a motion for judgment of acquittal notwithstanding the jury's verdict, asserting that convictions for murder in the first degree and armed criminal action in connection with the murder and assault in the first degree and armed criminal action in connection with the assault violated the double jeopardy clause and Section 556.041(1). The trial court partially granted Defendant's motion, finding that "to avoid double jeopardy, there has to be an element in each charge that's not present in the other charge." The trial court concluded that "there's nothing in the assault that's not in the murder" and acquitted Defendant of assault in the first degree and the related armed criminal action conviction.

The trial court sentenced Defendant to concurrent sentences[3] of life imprisonment for murder and thirty years' imprisonment for armed criminal action. Defendant appeals, and the State cross-appeals.

---

[3] Neither the trial court's oral pronouncement nor written judgment provides whether the sentences are to run concurrently or consecutively. Rule 29.09 provides that in such situations, the sentences shall run concurrently. Mo. Sup. Ct. R. 29.09.

*Discussion*

In his first point, Defendant asserts that the trial court erred in refusing to submit Defendant's self-defense instruction on murder in the first degree and assault in the first degree. Specifically, Defendant contends that: (1) substantial evidence supported the submission of a self-defense instruction on both charges; and (2) his assertion that he accidentally shot Victim did not preclude submission of a self-defense instruction on murder in the first degree.

In determining whether the trial court erred in refusing to submit an instruction on self-defense, we view the evidence in the light most favorable to the defendant. State v. Westfall, 75 S.W.3d 278, 280 (Mo. banc 2002). The trial court must submit a self-defense instruction "when substantial evidence is adduced to support it, even when that evidence is inconsistent with the defendant's testimony." Westfall, 75 S.W.3d at 281. Where a trial court erroneously refuses to submit an instruction, we will reverse if the error resulted in prejudice to the defendant. State v. Hiltibidal, 292 S.W.3d 488, 494 (Mo.App.W.D. 2009).

A defendant may be justified in the use of physical force to defend himself when he reasonably believes such force is necessary to defend himself from what he reasonably believes to be the use or imminent use of unlawful force by another. Mo. Rev. Stat. § 563.031.1. A claim of self-defense requires evidence of four elements: (1) absence of aggression or provocation on the defender's part; (2) real or apparently real necessity for the defender to kill to save himself from an immediate danger of serious bodily injury or death; (3) reasonable cause for the defender's belief in such necessity; and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life. State v. Weems, 840 S.W.2d 222, 226 (Mo. banc 1992).

4

"Deadly force in self-defense is justified only when [a] defendant reasonably believes it is necessary to protect himself from immediate danger of serious bodily injury or death." State v. Crudup, 415 S.W.3d 170, 175-76 (Mo.App.E.D. 2013). Deadly force is force that the defender uses with the purpose of causing, or which the defender knows to create, a substantial risk of death or serious physical injury. State v. Burks, 237 S.W.3d 225, 229 (Mo.App.S.D. 2007).

Defendant does not dispute that he used deadly force in shooting his gun at Mr. Williams. Rather, he asserts that there was substantial evidence to warrant a self-defense instruction because he was "not the initial aggressor[,]… he tried to avoid further confrontation with Mr. Williams by backing away and declining to fight him, and when this was unsuccessful, he began to fear imminent serious physical injury or death" and "only then did [Defendant] draw his gun and begin firing." However, "[d]eadly force cannot be used to repel simple assault or battery." Crudup, 415 S.W.3d at 176 (quotation omitted). The use of deadly force in self-defense requires a "real or apparently real necessity for the defender to kill or use deadly force to protect himself from immediate danger of serious bodily injury or death." Dorsey v. State, 113 S.W.3d 311, 317 (Mo.App.S.D. 2003).

A defendant is not entitled to a self-defense instruction where the defendant's testimony does not establish he reasonably believed deadly force was necessary to protect himself from immediate danger of serious bodily harm or death. Burks, 237 S.W.3d at 227. The record in this case does not establish that Defendant reasonably believed the use of deadly force was necessary. Rather, the record reveals that Mr. Williams threatened to fight, yelled at, and came within inches of Defendant. Mr. Williams neither hit nor exhibited a weapon to Defendant. No one, including Defendant, saw a weapon on Mr. Williams during the incident. Defendant

testified that not until Mr. Williams had run away and stopped between two dumpsters did he "figure" that Mr. Williams was looking for a gun. Accordingly, Defendant was not faced with a real or apparently real necessity to use deadly force to defend himself against Mr. Williams when he fired the first gunshot before Mr. Williams ran away. See e.g. id. at 229 (concluding the defendant's testimony that "he 'was thinking' somebody was going to beat him up and… he 'figured' someone would 'kick the snot' out of him" did not establish substantial evidence that deadly force was necessary).

Moreover, "self-defense furnishes a defense only when the danger to be warded off is imminent; it is not available when the victim is in headlong retreat." State v. Arellano, 736 S.W.2d 432, 435 (Mo.App.W.D. 1987). When Mr. Williams ran away from Defendant, Mr. Williams' retreat terminated any imminent threat of danger to Defendant, and Defendant could have retreated as well. Instead, Defendant remained and decided to shoot his gun at least twice more. "[W]here a defendant continues or renews the altercation when he had an opportunity to abandon or decline further, he becomes the aggressor, even though he was not at fault in the original struggle." State v. Hajek, 716 S.W.2d 481, 483 (Mo.App.E.D. 1986). "Under such circumstances, self-defense is not justified." Id. Accordingly, the trial court did not err in its refusal to submit a self-defense instruction. Point denied.[4]

In his second point, Defendant seeks correction of a clerical mistake in the written judgment providing that he pleaded guilty to murder in the first degree and armed criminal action when he went to trial on both counts. He requests we remand to the trial court for correction of

---

[4] Because Defendant was not entitled to a self-defense instruction for shooting at Mr. Williams, we do not address Defendant's second contention that submission of a self-defense instruction was not precluded by Defendant's assertion that killing Victim was an accident.

6

judgment *nunc pro tunc*.[5]  The State concedes that the written judgment contains a clerical mistake and agrees that remand is proper to correct the written judgment.

The trial court may correct clerical mistakes in the judgment that result from oversight or omission.  Mo. Sup. Ct. R. 29.12(c).  The trial court's failure to accurately record that Defendant's convictions resulted from trial rather than plea was a clerical mistake under Rule 29.12(c).  See State v. Fuller, 267 S.W.3d 764, 767 (Mo.App.S.D. 2008).  Such mistakes can be corrected by a *nunc pro tunc* order.  State v. Carroll, 207 S.W.3d 140, 142 (Mo.App.E.D. 2006).  Accordingly, we remand to the trial court for correction of judgment.

In its sole point on cross-appeal, the State asserts that the trial court erred in granting Defendant's motion for judgment of acquittal notwithstanding the verdict on Defendant's convictions for assault in the first degree and armed criminal action in connection with the assault.  Specifically, the State asserts that Defendant's convictions do not violate double jeopardy principles because: (1) neither assault in the first degree nor armed criminal action is a lesser-included offense of murder in the first degree under the statutory elements test; and (2) the offenses were "separate units of prosecution" and thus the punishment was not for the same conduct.  Defendant contends that the trial court did not err in acquitting him of assault and armed criminal action on double jeopardy grounds because, as charged by the State, assault was a lesser included offense of murder in that it was impossible for Defendant to commit murder without necessarily committing assault.

The double jeopardy clause of the Fifth Amendment to the United States Constitution prohibits multiple punishments for the same offense and similarly "forbids the state from

---

[5] In his point, Defendant asserts that the trial court plainly erred in entering its written judgment providing that Defendant pleaded guilty.  We decline to review for plain error but rather order correction of the clerical mistake under Rule 29.12(c).

splitting a single crime into separate parts and then prosecuting the offense in piecemeal." U.S. Const. amend. V; State v. Nichols, 865 S.W.2d 435, 437 (Mo.App.E.D. 1993). The constitutional prohibition against multiple punishments for the same offense is "designed to ensure that the sentencing discretion of the court is confined to the limits established by the legislature." State v. McTush, 827 S.W.2d 184, 186 (Mo. banc 1992). Where the legislature has specifically authorized cumulative punishment under two statutes proscribing the same conduct, the trial court may impose cumulative punishment under such statutes in a single trial without violating the double jeopardy clause. Id. Where the statutes are silent on whether cumulative punishment is authorized, as is the case here, we look to Section 556.041, the general cumulative punishment statute. Id. at 187.

Section 556.041[6] limits when a defendant may be convicted and sentenced in a single trial of several offenses arising from the same conduct. In pertinent part, Section 556.041(1) prohibits convicting a defendant of more than one offense if one offense is a lesser included offense of another offense, as defined in Section 556.046. Section 556.046(1) provides that an offense is an "included offense" when "[i]t is established by proof of the same or less than all of the facts required to establish the commission of the offense charged."

The statutory-elements test determines whether an offense is a lesser-included offense. State v. Van Doren, 657 S.W.2d 708, 715 (Mo.App.E.D. 1983). To be a lesser-included offense, "the lesser crime must be included in the higher crime with which the accused is *specifically charged*, and … the averment of the indictment *describing the manner in which the greater offense was committed* must contain allegations essential to constitute a charge of the lesser, to sustain a conviction of the latter offense." State v. Smith, 592 S.W.2d 165, 166 (Mo. banc 1979)

---

[6] All statutory references are to RSMo 2000, as supplemented.

(emphsis added). "An offense is a lesser[-]included offense if it is impossible to commit the greater without necessarily committing the lesser." State v. Derenzy, 89 S.W.3d 472, 474 (Mo. banc 2002). "The majority rule … is that a lesser crime is an included offense when it consists of legal elements which must always be present for the greater crime to have been committed *in the manner in which the greater crime is charged in the accusatory pleading*." State v. Hibler, 5 S.W.3d 147, 150 (Mo. banc 1999).

The State asserts that assault in the first degree is not a lesser-included offense under the statutory elements test because determining whether one offense is included in another offense is "limited to the statutory elements of each offense, not the evidence adduced at trial." The State's assertion "fail[s] to fully describe the correct method of analysis." Becker v. State, 260 S.W.3d 905, 909 (Mo.App.E.D. 2008). Where the statute defining the greater offense allows for alternative methods of commission, the court must consider, under the statutory-elements test, the manner in which the greater offense is charged.[7] Id. at 909. "[T]he analysis of statutory elements will require reference to the charging instrument whenever the greater offense allows for alternative methods of commission." Id.

Applying the statutory-elements test, we consider the constituent elements of each offense to determine whether assault in the first degree is a lesser-included offense of murder in the first degree as charged in this case. "A person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." Mo. Rev. Stat. § 565.020.1. In its indictment, the State charged that "[Defendant] after

---

[7] Conversely, "[i]f the statute criminalizing the greater offense allows only a single method of commission, … the determination of whether a lesser offense is included in the greater offense can be completed by comparing the elements as set forth in the two statutes." Id.

9

deliberation, knowingly cause the death of [Victim] by shooting her when he was shooting at [Mr. Williams]."

"A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes or attempts to cause serious physical injury to another person." Mo. Rev. Stat. § 565.050.1. The State charged that "[Defendant] shot at [Mr. Williams], and such conduct was a substantial step toward the commission of the crime of attempting to kill or cause serious physical injury to [Mr. Williams], and was done for the purposes of committing such assault."

As the State charged murder in the first degree in this case, it encompassed all of the legal and factual elements of assault in the first degree, namely that Defendant shot at Mr. Williams for the purpose of attempting to kill him or cause him serious physical injury. Defendant correctly asserts that "[b]y charging [Defendant] committed … murder in the first degree '*when he was shooting at [Mr.] Williams*,' the State made proof of… assault an essential element of… murder." Thus, assault in the first degree was a lesser-included offense of murder in the first degree.

The State asserts that the offenses were "separate units of prosecution" because they were committed against separate victims and thus convictions for both murder and assault do not violate double jeopardy. However, the existence of more than one victim does not dispose of the requirement that each charged offense must contain an element that the other does not. In State v. Barraza, a case on which the State relies, the court concluded that the defendant's convictions for two counts of unlawful use of a weapon based on a single gunshot did not violate double jeopardy because each count "required proof of a fact which the other did not," making them

10

separate offenses.  238 S.W.3d 187, 194 (Mo.App.W.D. 2007) (quotation omitted).[8]  Here, because of the way in which the State charged Defendant, to prove murder in the first degree, the State had to prove assault in the first degree and assault did not require proof of a fact which proof of murder did not.  Point denied.

### *Conclusion*

The judgment of the trial court is affirmed, and we remand for correction of judgment *nunc pro tunc* to reflect that Defendant was found guilty by jury of murder in the first degree and armed criminal action in connection with the murder.

Patricia L. Cohen, Judge

Lisa S. Van Amburg, P.J., and
Philip M. Hess, J., concur.

---

[8] In Barraza, "the State had to prove (once each for Boyles and Daniels): (1) that [the defendant]… knowingly shot a firearm at a motor vehicle, and (2) that as a result of this conduct, [the victim] suffered injury or death."  Id.