**STATE of Missouri, Respondent,**

v.

**James P. DOWDY, Appellant.**

**No. WD 59014.**

Missouri Court of Appeals, Western District.

Sept. 4, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 30, 2001.

Application for Transfer Denied Dec. 18, 2001.

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Tara L. Jensen, Kansas City, for appellant.

John M. Morris, III, Jefferson City, for respondent.

Before SPINDEN, Chief Judge, HOWARD and HARDWICK, JJ.

HARDWICK, Judge.

Appellant James P. Dowdy was charged with and found guilty of forcible rape, two counts of forcible sodomy, two counts of armed criminal action, and felonious restraint. He appeals only the conviction on Count V, forcible sodomy, claiming the evidence was insufficient to support the jury's verdict. We affirm.

**Factual and Procedural Background**

In February 1998, Appellant was released from prison and went to live for several months with his aunt, L.W., in Kansas City. On September 4, 1998, after they argued earlier in the evening, Dowdy went to L.W.'s bedroom and asked her, "Where is my dope?" L.W. said she didn't know. Dowdy told her there would be trouble if the drugs were not found.

Dowdy returned moments later to L.W.'s room, snapped a white rope-like object in his hand and said, "I'm going to kill you." He wrapped the object around L.W.'s neck, causing her to fall against the bed. Dowdy placed his knees between her legs, pinned her down, and hit her twice in the face. Balling up a washcloth, he shoved it into L.W.'s mouth and secured it by wrapping a towel around her head. With the strap from L.W.'s purse, Dowdy tied her hands behind her back and her ankles together. He then turned her over onto her back, straddled her and said, "Auntie, I'm going to have to kill you." He held a pillow over her face.

Dowdy removed the pillow and attempted oral sex with L.W. She resisted opening her mouth, but Dowdy was able to move the washcloth aside and tried to force his penis in on the other side of L.W.'s mouth. Dowdy told her if she moved or made a sound, he would kill her. He took a knife, held it to her neck asking, "Who's the boss hog now?" He then moved the knife to her leg and stabbed her in her thigh, asking "Does this feel like I'm kidding? Does this feel like I'm joking?"

Dowdy then undressed himself, cut L.W.'s clothes off her body and put his mouth on her breast. He dragged her to the foot of the bed where he attempted to put his penis into her vagina. He was unable to do so, so he turned her over and cut loose the ties around her hands and ankles. He penetrated her anally until he ejaculated.

Dowdy eventually released L.W., and she immediately sought help. When officers arrived at L.W.'s apartment, Dowdy was seated on the couch. He had a knife in his hand and threatened suicide. One officer recalled Dowdy stating "that he had done five years in the penitentiary for rape and said he was probably going to go back." Dowdy also told the officer "he

had tied up his aunt in the bedroom and raped her."

An ambulance transported L.W. to Truman Medical Center, where she was examined by a sexual assault nurse. L.W. told the nurse she had been "penetrated orally with a penis."

Dowdy was charged with six counts: 1) forcible rape, 2) a corresponding count of armed criminal action, 3) forcible sodomy, for anally sodomizing L.W., 4) a corresponding count of armed criminal action, 5) forcible sodomy, for "putting his penis in [L.W .'s] mouth", and 6) felonious restraint.

At trial, both at the close of the State's evidence and all the evidence, Dowdy moved for and was denied motions for judgment of acquittal. The jury found him guilty on all counts. He was sentenced as a prior and persistent offender to consecutive terms of the maximum sentences allowed by law on each count: life imprisonment on the first five counts and seven years on the last count. Dowdy appeals his Count V conviction on forcible sodomy.

### Standard of Review

The issue on appeal is whether the trial court erred in denying Dowdy's Motion for Judgment of Acquittal because the State's evidence failed to establish the legal elements of forcible sodomy and was, therefore, insufficient to allow a finding of guilt beyond a reasonable doubt. In reviewing the sufficiency of the evidence, we must view all the evidence and reasonable inferences to be drawn therefrom in the light most favorable to the verdict and ignore all evidence and inferences to the contrary. *State v. Trimmer*, 849 S.W.2d 725, 727 (Mo.App. E.D.1993). This Court must determine whether the state introduced evidence sufficient to allow a reasonable trier of fact to find each element of

the charged offense beyond a reasonable doubt. *State v. Clay*, 975 S.W.2d 121, 139 (Mo.banc 1998), *cert. denied*, 525 U.S. 1085, 119 S.Ct. 834, 142 L.Ed.2d 690 (1999).

## Analysis

In Count V of the Information in Lieu of Indictment, the State charged the Appellant with the felony of forcible sodomy in violation of Section 566.060 RSMo.[1] This charge was based on the factual allegation that Dowdy put his penis in L.W.'s mouth without her consent and, in the course of such offense, displayed a dangerous instrument in a threatening manner. The State sought to prove these allegations at trial by presenting the testimony of L.W., the nurse who examined L.W. in the hospital sexual assault unit, and the officer who heard Dowdy's confession of rape upon his arrest. The jury convicted Dowdy on Count V based on this evidence.

On appeal, Dowdy challenges the sufficiency of the State's evidence to prove forcible sodomy for two reasons. First he claims the State failed to prove he placed his penis in the victim's mouth. Second, he claims the State failed to prove he displayed a dangerous instrument in a threatening manner during the course of the oral sodomy. If the State was required to prove these elements for forcible sodomy and failed to adduce sufficient evidence on each element, we must reverse the verdict and acquittal is mandated on that charge. *State v. Wood*, 596 S.W.2d 394, 398 (Mo.banc), cert. denied 449 U.S. 876, 101 S.Ct. 221, 66 L.Ed.2d 98 (1980).

Our review of Appellant's claim is guided by Section 566.060.1 which codifies the crime of forcible sodomy as follows:

A person commits the crime of forcible sodomy if such person has deviate sexual intercourse with another person by the use of forcible compulsion. Forcible compulsion includes the use of a substance administered without a victim's knowledge or consent which renders the victim physically or mentally impaired so as to be incapable of making an informed consent to sexual intercourse.

The term "deviate sexual intercourse" is further defined in Section 566.010(1) as:

[A]ny act involving the genitals of one person and the hand, mouth, tongue, or anus of another person or a sexual act involving the penetration, however slight, of the male or female sex organ or the anus by a finger, instrument or object done for the purpose of arousing or gratifying the sexual desire of any person; . . .

Applying these statutory elements, the trial court instructed the jury on the Count V forcible sodomy charge as follows:[2]

First, that on or about September 4, 1998, in the County of Jackson, State of Missouri, the defendant placed his penis in [L.W.'s] mouth, and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that defendant did so by use of forcible compulsion, and

Fourth, that defendant did so knowingly, and

Fifth, that, in the course of this conduct, the defendant displayed a dangerous instrument in a threatening manner,

Then you will find the defendant guilty under Count V of forcible sodomy.

---

1. All statutory references are to the Revised Statutes of Missouri 2000 unless otherwise noted.

2. This instruction parallels MAI CR 320.08.1, to be used to instruct on the felony of forcible sodomy.

■ Appellant challenges the evidence on Paragraph First of the instruction, which asks the jury to determine whether Dowdy placed his penis in L.W.'s mouth. We note initially that the language of this instruction poses a greater factual burden on the State than the statute requires. Pursuant to the definitional provisions of Section 566.010, sodomy is any act involving the genitals of one person and the mouth of another. This implies the necessity of contact between the genitals and mouth, but does not mandate proof that a defendant fully placed his penis in the victim's mouth. No evidence of penetration is required to establish the crime of sodomy. *State v. Clay,* 909 S.W.2d 711, 714 (Mo.App. W.D.1995).

■ By focusing on the jury instruction, Appellant avoids the reality that the state's trial evidence met the statutory threshold for sodomy. We find, however, that the evidence was also sufficient to support the verdict based on Paragraph First of the jury instruction.

The jury heard the following testimony from L.W. (on direct examination by the State):

State: Okay. Tell me what happened then.

L.W.: And he tried to move the towel from my face.

State: Okay.

L.W.: And he—he moved it—the washcloth a little and tried to force his penis in my mouth.

State: [L.W.], do you know at what point—you say he tried to force his penis into your mouth. Was he wearing his clothes at that time?

L.W.: (Witness nods head).

State: Is that a yes?

L.W.: Yes

State: I'm sorry. I need for you to answer out loud. Tell me how it was then that his penis was exposed and he tried to force it into your mouth.

L.W.: I don't know if he came up like that; but he tried to put it in my mouth; and I—I don't want to open it. And he looked at me; and he—he looked at me; and then he kind of smiled; and he backed off.

State: When he was, as you said, trying to force his penis into your mouth was his penis actually— where was it with respect to your mouth?

L.W.: He tried to move the towel and keep it in there, and he tried to force his penis in on this side.

This testimony contradicts Appellant's assertion that the State presented no evidence of contact between his penis and the victim's mouth. L.W. testified that Dowdy pushed the washcloth to one side of her mouth and made efforts to put his penis in on the opposite side. It is improbable that L.W. could have known which side of her mouth Dowdy attempted to enter unless he actually touched her mouth with his penis and tried to force it past her lips. Although L.W. did not specify the extent of oral penetration, she made it clear that some part of Dowdy's penis came into forced contact with a particular side of her mouth. By repeatedly referring to her mouth, as opposed to her lips or face, L.W.'s testimony focused on the inner area of her oral cavity. This evidence was sufficient for the jury to reasonably conclude that the defendant placed at least some part of his penis in her mouth.

The jury also was aware that L.W. gave a corroborative account of Dowdy's assault to the nurse who examined her at Truman Medical Center after the incident. The

nurse testified at trial that L.W. said she "had been orally penetrated with a penis." The defense did not object to this hearsay testimony and, thus, it provided a further evidentiary basis for the jury's conclusion that the State satisfied the first element of the Count V instruction on forcible sodomy. *State v. Mayabb,* 43 S.W.3d 429, 435 (Mo.App. S.D.2001).

Next, Appellant contends there was no proof that Dowdy ever displayed a dangerous instrument in a threatening manner during the course of the oral sodomy. We disagree, based on the applicable statutory definition and the evidence presented at trial.

A "dangerous instrument" is defined as "any instrument, article, or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." Section 556.061(9). "A utilitarian instrument becomes a dangerous one when circumstances in which it is used demonstrate an intent and motive to cause death or serious harm to a person." *State v. Pogue,* 851 S.W.2d 702, 706 (Mo.App. S.D.1993) (involving the use of an automobile as a dangerous instrument.)

Several types of utilitarian instruments have been found to be "dangerous instruments" under Missouri law including: a beer bottle in *State v. Terrell,* 751 S.W.2d 394, 395 (Mo.App.E.D.1988); a screwdriver in *State v. Boyd,* 844 S.W.2d 524, 526 (Mo.App. E.D.1992); and the assailant's elbow in *State v. Burch,* 939 S.W.2d 525, 530 (Mo.App.W.D.1997). All of these cases involved objects not designed for use as a weapon. The key inquiry is whether the object is capable of causing death or serious physical injury by the manner of use, and whether the circumstances of use demonstrate an intent and motive to cause such death or serious

harm. *State v. Idlebird, supra* 896 S.W.2d 656, 664 (Mo.App. W.D.1995).

The record here indicates that Dowdy used several household items to subdue and threaten L.W. prior to and during the time he sodomized her. He initially wrapped a rope-like object around her neck and forced her onto the bed, as he said, "I'm going to kill you." L.W. testified the rope felt tight, as if it were strangling her. Dowdy then shoved a washcloth in L.W.'s mouth, and wrapped a towel around her head. The towel covered L.W.'s nose and mouth, such that she felt she could not breathe. Immediately prior to the oral sodomy, Dowdy held a pillow over L.W.'s face and told her he was going to kill her.

Dowdy's repeated threats, combined with his use of the rope-like object, the towel, and the pillow demonstrated his intent to cause L.W. serious injury or death. These household objects became weapons when Dowdy used them in a manner that could have caused L.W.'s death by strangulation or suffocation. He restricted her breathing and movement as a means of having forced sexual contact with her. Accordingly, the State's evidence was sufficient for the jury to conclude that Appellant displayed dangerous instruments in a threatening manner in the course of sodomizing his victim.

### Conclusion

The jury's verdict on the Count V charge of forcible sodomy was sufficiently supported by the State's evidence. We affirm.

All concur.