STATE of Missouri, Plaintiff–
Respondent,

v.

Jeffrey D. CARLOCK, Defendant–
Appellant.

No. 28188.

Missouri Court of Appeals,
Southern District,
Division One.

Dec. 27, 2007.

Rosalynn Koch, Columbia, MO, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., Mary Highland Moore, Asst. Atty. Gen., Jefferson City, MO, for respondents.

JEFFREY W. BATES, Judge.

Jeffrey Carlock (Defendant) was charged by information with committing the class C felony of second-degree assault. *See* § 565.060.[1] Following a bench

1. All references to statutes are to RSMo (2000). All references to rules are to Missouri Court Rules (2007).

trial, he was convicted and sentenced to serve five years in prison. The only issue on appeal is whether the court erred in overruling Defendant's motion for judgment of acquittal at the close of the State's evidence based upon a challenge to the sufficiency of the information. This Court affirms.

Defendant does not challenge the sufficiency of the evidence to support his conviction. Viewed in a light most favorable to the judgment, the following facts were adduced at the trial.

Rodney Kline (Kline) had advanced Lou Gehrig's Disease. As a result, he was a bedridden quadriplegic dependent upon a respirator and feeding tube. His only means of communication was through blinking his eyes. His deteriorated condition necessitated constant nursing care. Kline owned his home and resided in the basement. Tom Stokes (Stokes) and his wife lived upstairs and took care of the house for Kline.

On October 3, 2004, Becky Fust (Fust) was working a 12–hour shift as one of Kline's nurses. Defendant, who was acquainted with Kline, came to visit him and was let into the basement by Fust. She stood on one side of Kline's bed to assist with communication while Defendant stood on the other side. Defendant began waving his hands over the top of Kline's body while making statements like "Lord, take the devil out of this man … take him out of his misery, free him from this illness." Defendant's voice grew louder and he said, "it won't be too much longer. He will not be in anymore further pain." Fust began to fear for Kline's life. He opened his eyes very wide, which was his way of catching Fust's attention. She ascertained that Kline was okay and wanted her to remain by his side. Fust told him that she was not going to leave.

Defendant got down onto his knees with his hands on Kline and continued to pray loudly, saying, "it's all going to be over soon. . . . You're not going to be suffering anymore." Defendant rose and asked Fust to leave the room. She refused, and Defendant threatened to make her leave. When Fust said that she was going to call the police, she was attacked by Defendant. He began to drag her around the foot of Kline's bed, saying that she was the devil and that he had to destroy her because she would not let him do what he needed to do. During the melee, Fust managed to grab a telephone. Defendant took it away from her and began beating her on the head with it. Fust was able to grab a glass coffeepot and break it on Defendant's head. Though bleeding, Defendant grabbed Fust again and pulled her into the bathroom. Defendant shoved her onto the floor and shut the door. He was still holding the telephone and began wrapping the cord around Fust's neck. She was able to get her hand between the cord and her throat, but she was "seeing stars" and nearly lost consciousness several times as Defendant pulled the cord taut. The ordeal ended when Stokes opened the bathroom door. He saw what was happening and convinced Defendant to leave. Defendant's use of the telephone cord to choke Fust caused scratches on the back of her hand, red marks on her throat and subsequent bruising to her neck.

On appeal, Defendant contends that the trial court erred in denying his motion for judgment of acquittal at the close of the State's evidence because the information failed to allege that Defendant used a dangerous instrument to choke Fust. The additional facts relevant to this issue are set forth below.

In July 2005, Defendant was charged by information with committing second-degree assault. In pertinent part, the infor-

mation alleged that Defendant, "in violation of Section 565.060, RSMo, committed the class C felony of assault in the second degree ... in that on or about the 3rd day of October, 2004 ... the defendant knowingly caused physical injury to Becky Fust by choking her." To conform with the approved format for this charge, the information should have alleged that defendant "knowingly caused physical injury to Becky Fust *by means of a dangerous instrument* by choking her." (Italics added.) *See* MACH–CR 19.04. Prior to trial, Defendant did not file a motion raising this defect as required by Rule 24.04(b)(2).

Defendant waived his right to a jury trial and was tried by the court in September 2006. During the State's opening statement, the prosecutor told the judge that Defendant choked Fust with a telephone cord to the point that she nearly lost consciousness. Defense counsel did not object to this statement or express any surprise at what was said. Fust was the State's only witness, and it is from her testimony that we have drawn the previously-recited facts favorable to the judgment. At the close of the State's evidence, Defendant filed a motion for judgment of acquittal. One paragraph of the motion alleged that "[t]he information does not state facts sufficient to constitute an offense against the State of Missouri." While arguing the motion, defense counsel said that the information was insufficient because:

> It doesn't follow any of the Missouri State statutes for assault in the second degree. Under Section 565.060, the State for knowingly causes physical injury must allege the dangerous instrument—dangerous weapon or instrument as a final element of the charge, which they have not done in this case, Your Honor. Barring some sort of domestic relationship, Your Honor, that dangerous weapon or instrument must be in

the information for it to be sufficient under the statute, and we would ask for dismissal at this time.

The court denied the motion.

During Defendant's case-in-chief, he testified on his own behalf and denied ever wrapping the telephone cord around Fust's neck or choking her. According to Defendant, that "never happened." Defendant said he only intended to use the cord to tie Fust's hands. Defense counsel also presented testimony from a licensed psychologist that Defendant lacked the mental capacity to act knowingly.

During closing argument, the State asked the court to find Defendant guilty of second-degree assault because he used the telephone cord to strangle her and bruised her neck. During Defendant's closing argument, his counsel argued that the first issue the court had to decide was whether Defendant ever attempted to choke Fust. "The only evidence that he had done so was Ms. Fust's testimony that he choked her. He took the stand and said that he never choked her. He never wrapped the phone cord around her neck. It was never his intention to hurt her." This fact issue presented a credibility determination for the court to make. Counsel also argued that Defendant lacked the ability to act knowingly. Based upon the evidence presented, defense counsel asked the court to consider finding Defendant guilty of the class D felonies of attempted choking, attempted assault or assault in the third degree if Defendant recklessly caused injury to Fust.

The court took the matter under advisement to consider additional documentary exhibits admitted in evidence. In October 2006, the court found Defendant guilty beyond a reasonable doubt of second-degree assault. This appeal followed.

■ The first issue presented is what standard of review applies. Defendant argues that his challenge to the sufficiency of the information was timely because it was made during the trial. We disagree. Rule 24.04(b)(2) states:

*Defenses and Objections Which Must Be Raised.* Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency of the proceeding.

Based upon the plain language of this rule, Defendant's challenge was untimely because it was not raised by motion before trial. *See State v. Barnes,* 942 S.W.2d 362, 368 (Mo. banc 1997); *State v. Kenney,* 973 S.W.2d 536, 543–44 (Mo.App.1998) *overruled on other grounds by State v. Withrow,* 8 S.W.3d 75 (Mo. banc 1999); *State v. Musil,* 935 S.W.2d 379, 382 (Mo.App.1996); *State v. Cortez–Figueroa,* 855 S.W.2d 431, 439–40 (Mo.App.1993).[2] Because Defendant's challenge was untimely, the information will not be deemed insufficient unless it is so defective that "(1) it does not by any reasonable construction charge the offense of which the defendant was convicted or (2) the substantial rights of the defendant to prepare a defense and plead former jeopardy in the event of acquittal are prejudiced." *State v. Parkhurst,* 845 S.W.2d 31, 35 (Mo. banc 1992). In either event, a defendant must demonstrate actual prejudice in order to be entitled to relief. *Id.* "A defendant suffers actual prejudice if the information or indictment was either so deficient that the defendant was not placed on notice as to what crime he or she was being charged with or was so lacking in clarity that the defendant was unable properly to prepare a defense." *State v. Williams,* 126 S.W.3d 377, 381 (Mo. banc 2004).

■ In the case at bar, the information correctly identified the offense with which Defendant was charged, the applicable statute he allegedly violated, the proper grade of the offense, the date of the offense, the name of the alleged victim, the proper mental state for the offense, the

---

**2.** Defendant's reliance on *State v. Pride,* 1 S.W.3d 494 (Mo.App.1999), is misplaced. In *Pride,* the defendant challenged the sufficiency of his indictment for the first time on appeal. *Id.* at 502. The western district stated that, "[w]here, as in this case, the charged party does not raise an issue concerning the validity of his indictment before or during the trial, but raises it for the first time on appeal, then review of the alleged error is far more limited than would otherwise be the case." *Id.* Thus, *Pride* holds that a challenge to the sufficiency of an indictment raised for the first time on appeal is untimely. *Id.* We agree with that holding. Defendant, however, argues the quoted language from *Pride* means that a challenge to the sufficiency of the infor-

mation presented "during trial" would be timely. We reject that argument. The statement in *Pride* that the defendant had not challenged the validity of his indictment "during trial" was unnecessary to the decision and, therefore, mere dictum lacking any precedential value. *See Martinez v. State,* 24 S.W.3d 10, 16 (Mo.App.2000); *Ganaway v. Department of Social Services,* 753 S.W.2d 12, 14 (Mo.App.1988). "A judicial opinion should be read in light of the facts pertinent to that case, it being improper to give permanent and controlling effect to statements outside the scope of the real inquiry of the case." *State ex rel. Casey's General Stores, Inc. v. City of West Plains,* 9 S.W.3d 712, 720 (Mo.App. 1999).

injury inflicted and the act that inflicted the injury. The only thing omitted was an allegation that injury was inflicted "by means of a dangerous instrument." *See* MACH–CR 19.04. Therefore, the information could be reasonably construed to charge second-degree assault, which was the offense of which Defendant was convicted. Furthermore, the information was sufficiently specific to enable Defendant to plead former jeopardy in the event of an acquittal.

Defendant complains, however, that he did not receive sufficient notice of the offense to prepare his defense. After reviewing the record, we find that argument unpersuasive. At trial, Fust testified that Defendant choked her with the telephone cord. Defendant vehemently denied doing so. As defense counsel noted, this presented a credibility determination for the court to make. Defendant also presented evidence that he could not have acted knowingly, as required by § 565.060. On appeal, Defendant has not explained how either defense would have changed if the "dangerous instrument" language had been included in the information. Accordingly, Defendant has failed to demonstrate any actual prejudice from that deficiency. *See State v. Young,* 172 S.W.3d 494, 499–500 (Mo.App.2005) (where defendant denied at trial that he was the person who wielded a pocketknife, he was not prejudiced by an information that charged him with committing assault with a deadly weapon, instead of a dangerous instrument).

■ Defendant also argues that he was prejudiced because the legal standard used by the court to convict Defendant is unknown. That argument is specious. "Trial judges are presumed to know the law and to apply it in making their decisions." *State v. Feltrop,* 803 S.W.2d 1, 15 (Mo. banc 1991). The trial court was aware

that Defendant was charged with committing second-degree assault, in violation of § 565.060, by "knowingly caus[ing] physical injury to Becky Fust by choking her." Therefore, we presume the court knew that Defendant could not be found guilty unless he knowingly caused physical injury to Fust by means of a deadly weapon or dangerous instrument, as required by § 565.060.1(2). *See State v. McDonald,* 10 S.W.3d 561, 565 (Mo.App.1999) (trial court was presumed to know that the defendant could only be found guilty of second-degree drug trafficking if he knew the substance in a green bag was cocaine). A "[d]angerous instrument" is defined as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury[.]" § 556.061(9). At trial, Fust testified that she was choked by Defendant with a telephone cord. The cord exerted so much pressure on Fust's neck that she was "seeing stars" and nearly lost consciousness several times. She also sustained physical injuries from being choked. Had Stokes not intervened, Fust's asphyxiation with the telephone cord could have resulted in her death or serious physical injury. Under these circumstances, the telephone cord constituted a "dangerous instrument" within the meaning of § 565.060.1(2). *See State v. Dowdy,* 60 S.W.3d 639, 644 (Mo. App.2001) (rope-like object used to strangle victim of sexual assault into submission was a dangerous instrument). We also note that, during closing argument, defense counsel urged the court to consider whether Defendant should be convicted of several lower-grade offenses which were not charged in the information. The request implicitly recognized that the court was competent to investigate the applicable law and apply it to the facts presented in order to ascertain Defendant's innocence or guilt.

The judgment of the trial court is affirmed.

PARRISH, P.J., and SCOTT, J., Concur.