**STATE of Missouri, Respondent,**

v.

**Kenneth SMOOT, Appellant.**

No. ED 95499.

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 27, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 23, 2012.

Application for Transfer Denied
May 1, 2012.

Gwend Reneé Robinson, St. Louis, MO, for appellant.

Chris Koster, Atty. Gen., John Winston Grantham, Jefferson City, MO, for respondent.

KENNETH M. ROMINES, J.

This case involves the admissibility of an audio recording.

### Background and Procedural History

Kenneth Smoot (Appellant) was convicted of one count each of forcible rape and forcible sodomy and was sentenced to concurrent life terms without the possibility of parole as a persistent sexual offender. The convictions were the result of an attack Appellant perpetrated against L.L. (Victim). Appellant was 49 years old at the time of the attack and Victim was 74 years old.

Appellant had known Victim almost all of his life, having grown up with her children. For an unspecified time prior to and at the time of the attack, Appellant was homeless. Prior to the attack, Victim had allowed Appellant to come to her house to use her bathroom, she would cook him meals, and on the coldest nights, she permitted him to sleep on the couch in her living room.

Appellant was having lunch with Victim at her home on 2 March 2009 when something during their conversation made him angry. Appellant made an aggressive

move towards Victim which prompted Victim to go to her kitchen phone to call 9–1–1. Appellant slammed the phone down before Victim could complete the call and would not allow Victim to call from another phone in the house. When Victim started towards the front door to leave, Appellant grabbed her, pushed her down and proceeded to forcibly rape and sodomize her. During the entire attack Victim resisted and screamed "stop it."

Victim testified that during the attack her phone rang and she heard the voice of a friend (Friend) on her answering machine. Friend testified that when she phoned Victim, Victim did not answer but she could hear her yelling "Stop it, stop it, stop it." Apparently, during the struggle, Victim hit the record button on her answering machine and recorded the attack as the outgoing message. Police heard the recording when they responded to Victim's residence and made a digital recording which was admitted at trial as State's Exhibit # 31.

When police responded to her home, Victim told police that "he did this to me," indicating Appellant. Victim was taken to a local hospital and treated for wounds consistent with a sexual assault against an elderly woman. A rape kit was also performed.

Appellant's defense at trial was based primarily on a theory of consensual conduct, although he admitted on the stand that he continued to kiss Victim after she told him to stop and that he forcibly sodomized her. He denied forcibly raping her.

In this appeal, Appellant contends that the trial court erred in admitting Exhibit # 31 and allegedly involuntary statements made to police after he was arrested which were admitted at trial for impeachment purposes.

## Standard of Review

■■■ This Court reviews a trial court's decision to admit or exclude evidence for abuse of discretion. *State v. McKinney*, 336 S.W.3d 499, 502 (Mo.App. E.D.2011) (internal citations omitted). The trial court abuses its discretion if its ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration. *Id.* "Additionally, on direct appeal, this Court reviews the trial court for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Id.* An error is prejudicial only if there is a reasonable probability that but for the court's error the outcome of the trial would have been different. *Id.*

## Discussion

In his first point on appeal, Appellant claims the trial court erred in admitting into evidence an audio recording made by police of Victim's outgoing message on her answering machine allegedly recorded during the attack. Appellant argues that the recording included hearsay which was not covered by an exception, and was so prejudicial that it deprived him of a fair trial.

■ This Court finds that all statements made in the recording, both by Appellant and Victim, were admissible as part of the *res gestae* of the crime.

■■ *Res gestae* refers to those exclamations and statements made by either the participants, victims, or spectators to a crime immediately before, during, or immediately after the commission of the crime, when the circumstances are such that the statements made were a spontaneous reaction or utterance inspired by the excitement of the occasion and there was no opportunity for the declarant to deliberate and to fabricate a false statement.

Spontaneous utterances which qualify under the res gestae rule are admissible whether they are those of the defendant, the victim, or third persons and may be testified to in court by the declarant or by persons who heard them. *State v. Pflugradt*, 463 S.W.2d 566, 572 (Mo.App.1971) (internal citations omitted).

"The essential test for the admissibility of such statements, therefore, is spontaneity." *Id.* These statements could not have been more spontaneous in nature as they were made at the time the crime was being committed.

■ Appellant argues that the State did not lay a sufficient foundation to establish that the recording qualified as a spontaneous utterance. Specifically, Appellant claims the State made no showing that the recording was made at or around the time of the commission of the rape, nor that that the voices on the recording belonged to the Appellant and Victim. Appellant's argument faces two fatal obstacles. First, to the extent that Appellant argues there was insufficient proof as to when the recording was made, i.e. whether the recording was made at the time of the assault, he has abandoned this basis for objection. "Claims of inadequate foundation will not be considered for the first time on appeal." *State v. Blue*, 875 S.W.2d 632, 633 (Mo. App. E.D.1994). Contrary to Appellant's counsel's statements at trial, he did not move to exclude Exhibit # 31 through a motion in limine. In his motion in limine, Appellant only moved to exclude the 911 call between Friend and the dispatcher in which Friend recounted the content of Exhibit # 31. Nor did Appellant raise this grounds for objection at trial. Appellant's stated grounds for objection at trial were hearsay, improper foundation as to the identity of the speakers on the recording, and due process and confrontation clause issues. He did not make any mention of the issue of timing. In his subsequent motion for new trial, Appellant again only raised the issues of hearsay and improper foundation as to the identity of the voices on the recording. At no point prior to this appeal did he raise the issue of whether the State had made a sufficient showing that the recording was made at the time of the assault. Foundational objections should not be considered when raised for the first time on appeal because foundational deficiencies can often be easily remedied at trial. *State v. Hodges*, 998 S.W.2d 572, 574 (Mo.App. S.D.1999). Appellant's failure to raise this objection means the State was never given the opportunity to remedy this supposed defect. Therefore, this court will not review the issue.

Second, to the extent that Appellant argues there was no testimony identifying the voices on the recording, he is factually incorrect. Friend testified that she was familiar with both parties and recognized their voices on the recording. The trial court did not abuse its discretion by admitting Exhibit # 31.

In his second point on appeal, Appellant claims the trial court erred in allowing the State to use statements Appellant made to police after his arrest to impeach him at trial. Before trial, Appellant filed a motion to suppress all statements he made to police, claiming they were the product of physical coercion. At trial, the State attempted to introduce the statements for impeachment purposes. Appellant objected, arguing that the court must first make a finding as to the voluntariness of the statements before they could be introduced for any purpose. The State countered that even if the statements were involuntary, they were admissible for impeachment purposes. The court overruled

Appellant's objection.[1]

The State then elicited testimony from Appellant that he had been interviewed by a Sergeant Love at the police station, and during that interview he maintained that nothing sexual had occurred between he and Victim that day. Appellant admitted that he told Sergeant Love that he knew Victim did not want to have sex but that he wanted to. He testified that he only made those statements after Sergeant Love struck him between the legs and he was scared that if he did not tell Sergeant Love what he wanted to hear he would continue to beat him.

On redirect examination, Appellant testified about the physical abuse he supposedly suffered at the hands of Sergeant Love. Appellant testified that after he was placed in the back of a patrol car at the scene of the crime, Sergeant Love got into the backseat with him and questioned him about the crime. He said that when he told Sergeant Love that he did not assault victim, the sergeant struck him. Appellant continued that he was later placed in a paddy wagon and Sergeant Love came to see him again, and that during this visit

the sergeant kicked Appellant between the legs. Appellant also testified that once he arrived at the police station, he was interrogated in a "little box" by an officer wearing a brown suit, tie and mask with a mustache on it. Appellant admitted that he told this police officer that his previous statements that nothing sexual had ever occurred between he and Victim were false. He admitted that he and Victim were lovers and that they had had sex that day. But, Appellant testified that he only made these statements because he believed the officer in the mask was Sergeant Love and that he would beat him if he did not admit to the crime.

Appellant argues that since at all times he maintained that the statements were involuntarily, the court erred in admitting use of the statements, for any purpose, without first determining their voluntariness.

▮▮▮ Statements made to police may be admitted for impeachment purposes if the statements are voluntary. *State v. Mitchell,* 611 S.W.2d 211, 213 (Mo. banc 1981) (internal citations omitted).[2] If a

---

1. Appellant included this claim of error in his motion for a new trial.

2. The U.S. Supreme Court first announced the constitutional prohibition against the use of involuntary statements for any purpose in *Mincey v. Arizona,* 437 U.S. 385, 398, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). "But *any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law, 'even though there is ample evidence aside from the confession to support the conviction.'" *Id.* (emphasis original). The Court reaffirmed this position in *Dickerson v. U.S.,* 530 U.S. 428, 452, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). However, it is worth noting that there is no blanket prohibition against the admission of otherwise excludable evidence for impeachment purposes. Whether the statements are admissible for the limited purpose of impeachment depends on which constitutional guarantee was violated

in the obtaining of the statements. *Kansas v. Ventris,* 556 U.S. 586, 129 S.Ct. 1841, 1845, 173 L.Ed.2d 801 (2009). As Justice Scalia stated:

> Whether otherwise excluded evidence can be admitted for purposes of impeachment depends upon the nature of the constitutional guarantee that is violated. Sometimes that explicitly mandates exclusion from trial, and sometimes it does not. The Fifth Amendment guarantees that no person shall be compelled to give evidence against himself, and so is violated whenever a truly coerced confession is introduced at trial, whether by way of impeachment or otherwise. The Fourth Amendment, on the other hand, guarantees that no person shall be subjected to unreasonable searches or seizures, and says nothing about excluding their fruits from evidence; exclusion comes by way of deterrent sanction rather than to avoid violation of the substantive guarantee.

defendant challenges the voluntariness of a statement, the burden of proof as to the voluntariness of the statement lies with the state. *Id.* When, as in this case, the trial court fails to explore the issue, it is impossible for this Court to determine whether or not the statements were voluntary.

The remedy in such cases is not an automatic vacation of a defendant's conviction. *Mitchell,* 611 S.W.2d at 214. Instead, Appellant is simply entitled to a supplemental hearing on the issue of voluntariness. *Id.*

> Accordingly, the cause will be remanded so that the trial court may bring defendant, with counsel, before it [ ] for these purposes:
>
> 1. A full evidentiary hearing on the voluntariness issue and a determination and finding by the court whether the statement[s][ ] [were] voluntary or involuntary. If, after such hearing, the court finds and determines that it was involuntary, the judgment shall be set aside and the trial court shall grant a new trial on all issues, without the statement being admitted in evidence.
>
> 2. If the court finds and determines that the statement was voluntary, then it shall certify the transcript of the hearing and its determination and findings to this court to be made a part of the transcript in the cause for determination and disposition of the appeal upon the record as supplemented.

*Id.*

### Conclusion

We affirm the trial court's admission of the recording of the attack but remand the case for a hearing on the voluntariness of

> Inadmissibility has not been automatic, therefore, but we have instead applied an exclusionary-rule balancing test. The same is true for violations of the Fifth and Sixth

statements made by Appellant to police to be held no later than 60 days after this Opinion is issued.

KATHIANNE KNAUP CRANE, P.J. and LAWRENCE E. MOONEY, J., concur.

> Amendment prophylactic rules forbidding certain pretrial police conduct.
> *Id.* (internal citations omitted).