**STATE of Missouri, Respondent,**

**v.**

**Billy H. CRUDUP, Appellant.**

**No. ED 99718.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 10, 2013.

Ellen H. Flottman, Columbia, MO, for appellant.

Chris Koster, Richard A. Starnes, for respondent.

GARY M. GAERTNER, JR., Judge.

### Introduction

Billy H. Crudup (Crudup) appeals the trial court's entry of judgment and sentence upon a jury's verdict finding him guilty of domestic assault in the first degree, armed criminal action, and felonious restraint. On appeal, he asserts the trial court erred in failing to instruct the jury on a lesser-included offense and on the defense of self-defense, and in admitting certain evidence. We affirm.

### Background

The State of Missouri charged Crudup as a prior and persistent offender with the class A felony of first-degree domestic assault, armed criminal action, the class C felony of felonious restraint, and forcible rape. The evidence adduced at trial revealed the following.

Crudup and Linda Bracely (Victim) began a romantic relationship in the summer of 2010. By November of 2010, Crudup would spend the night at the apartment Victim shared with Natasha Marshall (Marshall) two or three times a week. Victim testified that the following occurred on the night of November 30, 2010. Victim arrived home around 10:45 p.m. and discovered Crudup in her bedroom. They watched television for a while and Crudup used Victim's mobile telephone. Crudup then requested her voicemail password so he could listen to her messages. When Victim refused, Crudup became angry. She attempted to leave the room, but he grabbed her arm. She slapped him, and he pushed her onto the bed, started choking her by putting his hands around her neck, and put a pillow over her face. She bit his left hand so he would get off of her, and he pushed her against the wall and choked her until she lost consciousness. Crudup then "destroyed everything" in her room: he cut the cord of her television and moved it in front of the door, blocking her in; he ripped the window screen with scissors; and he broke her eye glasses, collection of glass bottles, CDs, and DVDs.

Crudup hit Victim on the head with an unknown object, causing her to bleed. He made her remove her clothes and plugged in an iron, turning it on high. He again demanded to check her voicemail messages on her mobile telephone, and when she refused, he put the iron on her chest and breasts, burning her several times. Victim tried to call 911, but before she could get through he grabbed her telephone and broke it. He attempted to light her hair on fire with hairspray and a lighter, and he hit her in the nose with a screwdriver. Crudup tied Victim's hands and feet, and raped her. He went to sleep and untied her in the morning, apologizing for breaking her glasses. Victim testified that at no time did she have a weapon in her hand, and she does not have a knife in her room. In the morning, after Victim heard Marshall get up, Victim moved the television from in front of her door, and she asked to use Marshall's mobile telephone to call a friend to help her. Victim did not call 911 again until after Crudup had left the apartment. Victim did not report the rape to the police.

Victim identified pictures taken in the hospital documenting the puncture wound to her nose, bruises and nail marks on her neck, the laceration on the back of her

head, and the second degree burn marks on her chest. The wound on Victim's head required a staple to close, and the burn marks left her with permanent scars.

Marshall testified that she heard Victim come into the apartment on November 30, 2010; however, she fell asleep and did not hear anything the rest of the night. She agreed that Victim asked to use her mobile telephone in the morning, and she noticed that in Victim's room the television was blocking the door and there was Styrofoam on the floor, but she did not notice any injuries to Victim. On cross-examination, Marshall agreed she did not want to testify or be involved. The State asked if there was a history of domestic violence in her family. Counsel for Crudup objected and in a sidebar discussion, the State explained Marshall's history could explain why she responded to the incident by tuning it out. The court allowed the question, noting that it went to the witness's credibility and reason for testifying. Marshall confirmed that there was a history of domestic violence in her family. In the State's closing statement, it argued that Marshall was telling the truth and explained, "[s]he's familiar with domestic violence.... It's probably not the first night that she just went to sleep and blocked it all out, like she did on this night."

Crudup testified to the following in his own defense. He and Victim were watching television when she received a voicemail. He asked her to check it several times, and she got angry and smacked him six or seven times. After Victim told him she was using him, he got angry and tore up her room, trying to break everything that she loved. In trying to break the television, he dragged it to the floor. They were both shouting at each other and Victim was trying to stop him. Because she would not stop hitting him, he choked her into unconsciousness. When she was un-conscious, she hit her head on the dresser. After she woke up, she continued punching him and he attempted to subdue her on the bed with a pillow until she bit him. To calm himself down, he continued to destroy the things in her room and call her names.

After calming down, he gathered up his belongings from her room and decided to iron his clothes for work the next morning. As he was ironing, Victim came at him with a knife, apparently not wearing any clothes. She cut him three times on the arm, and as he was trying to get the knife away from her, he accidentally burned her with the iron. He got the knife away and threw it out the window, and both he and Victim calmed down. He suggested they go the hospital, but she told him to wait until the morning. They made up and had consensual sex. Crudup identified two photographs of a scar on his arm from where Victim stabbed him with a knife.

During the jury instruction conference, counsel for Crudup offered, as relevant to the appeal, first, an instruction on Count I, domestic assault in the first degree, with a lawful self-defense tag. Second, he offered a general instruction on self-defense. Third, he offered an instruction on Count III, felonious restraint, for the lesser-included offense of false imprisonment. The trial court denied the instructions.

After the trial, the jury found Crudup guilty of first-degree domestic assault, armed criminal action, and felonious restraint, but not guilty of forcible rape. Crudup moved for a judgment of acquittal or in the alternative for a new trial, which the trial court denied. The trial court sentenced Crudup to thirty years in the Missouri Department of Corrections on the charges of first-degree domestic assault and armed criminal action, and seven years on the charge of felonious restraint, to be served concurrently. This appeal follows.

## Discussion

### Point I

In his first point on appeal, Crudup argues the trial court erred in refusing to instruct the jury for Count III, felonious restraint, on the lesser-included offense of false imprisonment. He asserts the evidence supported an acquittal of the higher offense and a conviction of the lesser offense, because although he knowingly restrained Victim, that restraint did not expose her to a substantial risk of serious physical injury. We disagree.

A defendant is entitled to an instruction on a lesser-included offense when the evidence establishes a basis for both an acquittal of the greater offense and a conviction of the lesser offense. *State v. Johnson.* 284 S.W.3d 561, 575 (Mo. banc 2009). In reviewing whether an appellant was entitled to an instruction on a lesser-included offense, we view the evidence in the light most favorable to the appellant. *State v. Whitley*, 408 S.W.3d 305, 308 (Mo. App. E.D.2013). Nevertheless, a lesser-included-offense instruction is not required "where there is strong and substantial proof of the offense charged, and the evidence does not suggest a questionable essential element of the more serious offense charged." *State v. Taylor.* 373 S.W.3d 513, 524 (Mo.App. E.D.2012) (citation omitted).

A person commits the crime of felonious restraint if he knowingly restrains another unlawfully and without consent so as to interfere substantially with his liberty and exposes him to a substantial risk of serious physical injury. Section 565.120.1 RSMo. (2000).[1] A serious physical injury is a "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impair-

ment of the function of any part of the body." Section 565.002(6). By contrast, a person commits the crime of false imprisonment if he knowingly restrains another unlawfully and without consent so as to interfere substantially with his liberty. Section 565.130. False imprisonment is a lesser-included offense of felonious restraint. *State v. Cobbins*, 21 S.W.3d 876, 880 (Mo.App. E.D.2000).

Here, there was strong and substantial evidence supporting felonious restraint, even viewing the evidence in a light most favorable to Crudup. Crudup concedes there was evidence from which the jury could have found that he knowingly restrained Victim, in that he blocked the door with the television and held Victim down on the bed. He argues, however, the restraint itself did not expose her to a substantial risk of serious physical injury. Whether unlawful restraint exposes a victim to the risk of serious physical injury is determined from the circumstances, focusing "on the defendant's behavior for evidence of physical intimidation or violence which, if repeated or carried further, could have seriously injured the victim." *Id.* at 879. Here, the record shows that in addition to holding Victim down on the bed and blocking her in the bedroom, Crudup testified he choked Victim unconscious to subdue her, causing her to fall against the dresser and injure her head. Photographs taken at the hospital revealed bruises and nail marks on Victim's neck, and Victim required a staple to close the wound on her head. By choking Victim unconscious to subdue her, we find that Crudup both restrained Victim so as to interfere substantially with her liberty and exposed her to a substantial risk of serious physical injury, in that choking someone into unconsciousness inherently creates a substantial risk of death. *See* Sections

---

1. All statutory references are to RSMo. (2000) unless otherwise indicated.

565.002(6); 565.120.1; *see also State v. Carlock*, 242 S.W.3d 461, 465 (Mo.App. S.D.2007) (asphyxiation from being choked could have resulted in death or serious physical injury).

Accordingly, the evidence in the record does not establish a basis for an acquittal of felonious restraint. Without a basis for an acquittal on the greater offense, Crudup was not entitled to an instruction on the lesser offense. *Johnson*, 284 S.W.3d at 575; *Taylor*, 373 S.W.3d at 524. The trial court did not err in refusing an instruction on the lesser-included offense of false imprisonment.

Point denied.

### Point II

■ In his second point, Crudup contends the trial court erred in refusing to instruct the jury on self-defense on the charge of domestic assault in the first degree, because the jury could have found that Crudup was not the initial aggressor and he had a reasonable belief that deadly force was necessary to protect himself against an immediate danger of serious physical injury from Victim. Crudup's argument is without merit.

■ We review *de novo* claims of instructional error. *State v. Pennell*, 399 S.W.3d 81, 92 (Mo.App. E.D.2013). We view the evidence in a light most favorable to the submission of the instruction, disregarding evidence to the contrary. *State v. Avery*, 120 S.W.3d 196, 200 (Mo. banc 2003). The trial court must submit a self-defense instruction when it is supported by substantial evidence and the reasonable inferences therefrom, viewed in a light most favorable to the defendant. *Id.*; *State v. Habermann*, 93 S.W.3d 835, 837 (Mo.App. E.D.2002). Substantial evidence supporting a self-defense instruction may stem from the defendant's testimony alone, as long as the testimony contains some

evidence showing that he acted in self-defense. *Habermann*, 93 S.W.3d at 837.

■ A person may be justified in the use of physical force to defend his person when he reasonably believes such force is necessary to defend himself from what he reasonably believes to be the use or imminent use of unlawful force by another. Section 563.031.1, RSMo. (Cum.Supp. 2010). To claim self-defense, a defendant: (1) must not have been the aggressor in the assault; (2) must have reasonable grounds for the belief that he is faced with immediate danger of serious bodily injury; (3) must not use more force than that which appears reasonably necessary; and (4) must do everything in his power consistent with his own safety to avoid the danger. *Habermann*, 93 S.W.3d at 837.

Here, Crudup testified Victim smacked him six or seven times, which made him angry and caused him to tear up her room. Victim continued to hit him, and because she would not stop hitting him, he choked her into unconsciousness. Later, Victim came at him with a knife, cutting him three times on the arm, and as he was trying to get the knife away from her, he accidentally burned her with the iron.

■ Viewing the evidence in a light most favorable to defendant, he claims he choked Victim in self-defense and burned her by accident. Crudup was not entitled to self-defense instructions on either claim. Crudup used deadly force in choking Victim unconscious. *See* Section 563.011(1), RSMo. (Cum.Supp.2010) (deadly force is force that actor knows to create substantial risk of death or serious physical injury); *Carlock*, 242 S.W.3d at 465 (asphyxiation can result in death or serious physical injury). He was not, however, justified under the circumstances in using deadly force. Deadly force in self-defense is justified only when the defendant reasonably

believes it is necessary to protect himself from immediate danger of serious bodily injury or death. *State v. Burks*, 237 S.W.3d 225, 229 (Mo.App. S.D.2007); *see also Habermann*, 93 S.W.3d at 837 (to claim self-defense, defendant must not use more force than that which appears reasonably necessary). "Deadly force ... cannot be used to repel simple assault or battery." *Burks*, 237 S.W.3d at 229. There is no evidence here that Crudup was ever in fear of serious bodily injury or death. He testified that he choked her into unconsciousness to get her to stop hitting him, not that he feared injury, even minor, from her.

■ As for Crudup's claim that burning Victim was an accident, he was not entitled to a self-defense instruction. Because self-defense and accident are inherently inconsistent, a defendant is not entitled to an instruction on self-defense if the defendant claims accident. *Avery*, 120 S.W.3d at 201 (self-defense connotes intentional but justified force, whereas accident connotes unintentional injury). While the court must give a self-defense instruction if there was other evidence in the record that the defendant acted in self-defense, even if inconsistent with defendant's testimony, here there was no evidence from any witness indicating Crudup intentionally burned Victim to protect himself from imminent danger. *Id.* Thus, the trial court did not err in refusing to instruct the jury on self-defense on the charge of domestic assault in the first degree.

Point denied.

## Point III

■ In his third point, Crudup argues the trial court abused its discretion in overruling his objection to the State's question to Marshall of whether there was a history of domestic violence in her family, because Marshall's personal history was irrelevant and allowed the State to argue she was not a credible witness. We disagree.

The trial court has broad discretion to admit or exclude evidence, and we review that decision for abuse of discretion. *State v. Smoot*, 363 S.W.3d 108, 110 (Mo.App. E.D.2011). A court abuses its discretion if its ruling is clearly against the logic of the circumstances or is so unreasonable as to indicate a lack of careful consideration. *Id.* Moreover, on direct appeal, this Court reviews a trial court's rulings for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial or affected the outcome of the trial. *Id.*

Marshall testified that she fell asleep shortly after Victim came home, and that she was not awakened during the night. On cross-examination, she agreed she did not want to testify or be involved in this case, and, over objection, she answered yes when asked if she had a history of domestic violence in her family. Initially, we note that although Crudup argues the State used Marshall's personal history to attack the credibility of her testimony, the record does not support this assertion. Rather, the State used Marshall's personal history to justify her testimony, stating that Marshall was telling the truth and was just accustomed to blocking out episodes of domestic violence.

■ Crudup next argues Marshall's testimony should have been excluded because its prejudicial effect outweighed its probative value. However, regardless of its relevancy, we cannot see how Crudup was prejudiced by its admission. *See id.* Whether or not Marshall heard a disturbance the night of November 30, 2010, both Crudup and Victim agree that a disturbance occurred. Crudup's defense was not damaged by Marshall's testimony.

Admission of the testimony did not deprive Crudup of a fair trial or affect the outcome of the trial. *Id.* Thus, the trial court did not abuse its discretion in admitting Marshall's answer to the State's question.

Point denied.

### Conclusion

The judgment of the trial court is affirmed.

LISA S. VAN AMBURG, P.J., and PATRICIA L. COHEN, J., concur.