

# In the
# Missouri Court of Appeals
### Western District

| | | |
|---|---|---|
| **STATE OF MISSOURI,** | ) | |
| | ) | |
| **Respondent,** | ) | **WD87346** |
| | ) | |
| **V.** | ) | **OPINION FILED:** |
| | ) | **MAY 27, 2025** |
| **BRENT ROBERTS,** | ) | |
| | ) | |
| **Appellant.** | ) | |

**Appeal from the Circuit Court of Henry County, Missouri**
The Honorable Michael Brandon Baker, Judge

Before Division Two:  Cynthia L. Martin, Presiding Judge, Gary D. Witt, Judge and W. Douglas Thomson, Judge

Brent Roberts ("Roberts") appeals his conviction of fourth-degree domestic assault and alleges plain error in the trial court's refusal to submit an instruction for self-defense in light of evidence that he was struck first by the victim.  Because Roberts did not meet his burden of injecting self-defense as substantial evidence did not support each of the elements required for a self-defense instruction, we find no error and affirm.

## Factual and Procedural Background

We view the evidence in the light most favorable to a defendant who claims error in failing to submit a self-defense instruction.  *State v. Barnett*, 577 S.W.3d 124, 126 (Mo. banc 2019) (citations omitted).

On July 22, 2020, an officer with the St. Clair County Sheriff's Department ("Officer") was dispatched to a residential address in Osceola, Missouri on the report of a domestic altercation in progress. He knocked on the door of the residence, but received no response. He then located A.M. ("Victim") at a nearby apartment. Victim's friend, K.S. lived in the apartment. Victim reported that she fled to the apartment after an altercation with her boyfriend, Roberts. Victim was visibly upset, had blood all over her, and had red marks on her neck that in Officer's experience were consistent with choking. Officer photographed Victim, including the marks on her neck. Victim told Officer that the blood on her belonged to Roberts because Victim hit Roberts with a hard object while he was on top of her, choking her.

Officer then went back to the residence and located Roberts. Roberts was agitated and visibly intoxicated. There was a laceration on Roberts' nose where he had been hit by Victim. Roberts was charged with the Class D felony of second-degree domestic assault by choking.

At trial, Victim testified that she and Roberts argued on July 22, 2020, because Roberts believed Victim cheated on him. Victim said that Roberts was intoxicated, though she admitted she had been drinking too. Victim said that at some point she walked away from the argument and went to bed, while Roberts remained in the kitchen drinking. Victim said that after she fell asleep, she was awakened by the covers being pulled off of her by Roberts, who then got on top of her and started choking her. Victim described being choked to the point where she could not breath, while Roberts straddled her with his face directly over her face. Victim said that as she was flailing around, her

2

hand found something hard that she grabbed and used to hit Roberts as hard as she could in the face. Victim said that Roberts began bleeding heavily, but still continued to choke her for a moment after she struck him. Roberts eventually let go, at which point Victim escaped the room, and fled to K.S.'s apartment.

Victim testified that she did not tell K.S. exactly what had happened because she was still in a mindset of trying to protect her relationship with Roberts. Victim admitted during direct examination that she could have told K.S. that she struck Roberts first. However, Victim testified that this was not truthful. Victim testified that her reports to Officer were truthful.

K.S. testified that Victim was like a big sister to her. K.S. said that on the night of July 22, 2020, Victim was brought to K.S.'s apartment by a mutual friend. K.S. testified she was still at work at the time, and that if Victim talked to law enforcement that night, it was before K.S. got home. When K.S. first saw Victim, she was covered in blood, and looked like she had been beat up. K.S. told Victim to go to bed, because she did not want to deal with the drama. K.S. testified that she did not learn that Victim had been in an altercation with Roberts until later, and that Victim told her she hit Roberts first. K.S. testified that Victim went back home to Roberts the day after the altercation.

The case was submitted to the jury on the charged offense of second-degree domestic assault, and on the lesser included offenses of third-degree domestic assault and fourth-degree domestic assault. The verdict directors for all three of the submitted offenses required the jury to find that Roberts committed the offense "by choking" Victim. Roberts tendered a general self-defense instruction, and modified verdict

3

directors for each offense that cross-referenced the general self-defense instruction. The trial court refused the instructions.

Roberts was convicted of fourth-degree domestic assault, and was sentenced to one year in the county jail. Execution of the imposed sentence was suspended pending the successful completion of two years of unsupervised probation.

Roberts filed this timely appeal.

**Analysis**

Roberts raises two points on appeal. In his first point, Roberts argues that the trial court erred in refusing his general self-defense instruction because there was substantial evidence that Victim struck him first and that he acted in self-defense. In his second point, Roberts argues that the trial court erred in refusing his modified verdict director for fourth-degree domestic assault because it cross-referenced the tendered self-defense instruction.

Roberts concedes that the general self-defense instruction he tendered was not in proper form because it omitted language required by MAI-CR 4th 406.06 stating that an initial aggressor is not justified in using physical force to defend himself from a counter attack he provoked, and because it defined "serious physical injury" but did not use the term in the instruction. Roberts thus asks us to review his points on appeal for plain error. Because both points on appeal depend for their success on whether a general self-defense instruction should have been submitted to the jury, we address the points collectively.

4

Under Rule 30.20,[1] we have the discretion to review "plain errors affecting substantial rights . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020) (quoting Rule 30.20). Plain error review first requires us to determine if the claim of error "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *State v. Mills*, 687 S.W.3d 668, 675 (Mo. banc 2024) (quotation omitted). "[T]he failure to instruct upon a defense supported by the evidence is plain error affecting substantial rights." *State v. Jones*, 686 S.W.3d 293, 304 (Mo. App. E.D. 2024) (quoting *State v. Westfall*, 75 S.W.3d 278, 281 (Mo. banc 2002)). This is so "even if a self-defense instruction is not requested or was requested but not in the proper form." *State v. Whipple*, 501 S.W.3d 507, 513 (Mo. App. E.D. 2016) (citing *Westfall*, 75 S.W.3d at 280-81, 281 n. 9). If plain error is found, we proceed to the second step to determine whether the error "actually resulted in manifest injustice or miscarriage of justice." *Jones*, 686 S.W.3d at 301 (citation omitted). "Manifest injustice results when a defendant meets his burden of injecting the issue of self-defense into the case but the trial court does not submit an instruction on the issue to the jury . . . ." *Id.* at 307-308 (quoting *State v. Morrow*, 41 S.W.3d 56, 59 (Mo. App. W.D. 2001)).

Applying these principles to Roberts' points on appeal requires us to first determine whether his claim of self-defense was supported by the evidence. "The general rule is that an instruction must be based upon substantial evidence and the reasonable

---

[1]All Rule references are to *Missouri Court Rules, Volume I--State, 2025* unless otherwise noted.

inferences therefrom." *Westfall*, 75 S.W.3d at 280. "Sufficient 'substantial' evidence is provided if there is 'evidence putting a matter at issue.'" *State v. Bruner*, 541 S.W.3d 529, 535 (Mo. banc 2018) (quotation omitted). "If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it." *Id*. (quoting *Westfall*, 75 S.W.3d at 280). If self-defense is supported by substantial evidence, "the burden shifts to the State to prove a lack of self-defense beyond a reasonable doubt." *Id*.

"The elements of self-defense that must be shown by substantial evidence are set out in the self-defense statute, section 563.031."[2] *Id*. at 536. At the time of Roberts' offense, section 563.031 provided in relevant part:

> 1. A person may, subject to the provisions of subsection 2 of this section, use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person, unless:
>
> (1) The actor was the initial aggressor; ...
>
> ....
>
> 2. A person may not use deadly force upon another person under the circumstances specified in subsection 1 of this section unless:
>
> (1) He or she reasonably believes that such deadly force is necessary to protect himself, or herself or her unborn child, or another against death, serious physical injury, or any forcible felony;
>
> ....

---

[2]All statutory references are to RSMo 2016, as supplemented through the date of Roberts' offense, unless otherwise noted.

3. A person does not have a duty to retreat from a dwelling, residence, or vehicle where the person is not unlawfully entering or unlawfully remaining. A person does not have a duty to retreat from private property that is owned or leased by such individual.

Thus, to have been entitled to a self-defense instruction, substantial evidence had to establish that: (1) Roberts was not the initial aggressor; (2) Roberts had reasonable grounds to believe that he was faced with the imminent use of unlawful force by Victim; (3) Roberts did not use more force than was reasonably necessary, and if deadly force was used, Roberts had reasonable grounds to believe that it was necessary to protect himself from death, physical injury, or a forcible felony; and (4) Roberts had no duty to retreat.[3]  Deadly force is "physical force which the actor uses with the purpose of causing or which he or she knows to create a substantial risk of causing death or serious physical injury."  Section 563.011(2).

Here, Roberts was charged with, and convicted of, fourth-degree domestic assault based on choking Victim.  Victim testified that she was choked for an extended period of time by Roberts to the point of not being able to breath.  Roberts' act of choking Victim involved the use of deadly force.  *See State v. Crudup*, 415 S.W.3d 170, 175 (Mo. App. E.D. 2013) (holding that defendant "used deadly force in choking Victim unconscious"); *State v. Carlock*, 242 S.W.3d 461, 465 (Mo. App. S.D. 2007) (holding that asphyxiation from being choked could have resulted in death or serious physical injury).

---

[3]Substantial evidence established that the altercation between Roberts and Victim occurred in their shared residence, and thus that Roberts had no duty to retreat.

7

Roberts argues that because Victim and K.S. both testified that Victim "had admitted to striking [] Roberts first before he responded by choking her," there was "substantial evidence to support giving a self-defense instruction." [Appellant's Brief, p. 15] Though there is no evidence to explain why Victim first struck Roberts (if she in fact did so), we agree that the jury could have relied on Victim's and K.S.'s testimony to find that Roberts was not the initial aggressor. We disagree, however, that evidence putting at issue whether Roberts was the initial aggressor was sufficient, standing alone, to require the submission of a self-defense instruction.

Substantial evidence also had to establish that when Roberts responded to Victim's act of striking him by choking her, he had reasonable grounds to believe that he was faced with Victim's *imminent* use of unlawful force. Of necessity, imminent use refers to the use of *additional* unlawful force after Victim first struck Robert. Roberts' Brief does not address this requirement. And our review of the record reveals no evidence from which a jury could conclude that even if Victim first struck Roberts, the circumstances gave Roberts reasonable grounds to believe that Victim's use of *additional* unlawful force against him was imminent. This void is critical as without this evidence, Roberts' use of force against Victim cannot be explained by a reasonable belief that Roberts needed to protect himself, and can only be explained as retaliation out of anger for having been struck. Retaliation in the absence of evidence of a basis to fear the imminent use of additional unlawful force is not self-defense.

Substantial evidence also had to establish that when Roberts responded to Victim's act of striking him by choking her, he had reasonable grounds to believe that his use of

8

deadly force was necessary to protect himself from death, physical injury, or a forcible felony. Self-defense requires "a real, specific, actual and immediate threat of bodily violence to which the defendant's actions are an appropriate and proportional response." *State v. Seals*, 487 S.W.3d 18, 23 (Mo. App. S.D. 2016) (internal citations omitted). Here, there was no evidence that Roberts had reasonable grounds to believe that choking Victim was necessary to protect himself from death, physical injury, or a forcible felony[4] that was "***actually occurring or [was] imminent***." *State v. Sinks*, 652 S.W.3d 322, 338 (Mo. App. E.D. 2022) (emphasis in original) (citing *State v. Clinch*, 335 S.W.3d 579, 586-87 (Mo. App. W.D. 2011)), (other citations omitted). We have already explained that there is no evidence that Victim was threatening the imminent use of additional unlawful force after striking Roberts the single time referred to in the evidence. It follows that there was no evidence Victim was threatening the imminent use of additional force that could cause Roberts' death or physical injury, or that would qualify as a forcible felony. Roberts thus failed to meet his burden of injecting self-defense in this case. *See State v. Smith*, 456 S.W.3d 849, 852 (Mo. banc 2015) (holding that substantial evidence did not establish that defendant was faced with a real or apparently real necessity to use deadly force to defend himself); *Bruner*, 541 S.W.3d at 538 (holding that

---

[4]At the time of Roberts' offense, "forcible felony" was defined as "any felony involving the use or threat of physical force or violence against any individual, including . . . assault . . . ." Section 563.011(4). Even if Victim's purported striking of Roberts before he choked her constituted an "assault," it would not justify Roberts' subsequent use of deadly force in the absence of any evidence that Roberts had a reasonable basis to believe that he needed to use deadly force to protect himself from a forcible felony that was still actually occurring or was imminent.

9

defendant did not meet burden for injecting self-defense when there was no substantial evidence that he reasonably believed he needed to use deadly force to protect himself); *Crudup*, 415 S.W.3d at 175 (holding that defendant did not meet burden for injecting self-defense where defendant testified that victim "smacked him six or seven times, which made him angry, and . . . because she would not stop hitting him, he choked her into unconsciousness," as defendant was not justified under the circumstances to use deadly force).

Perhaps anticipating these concerns, Roberts notes that when the subject of a self-defense instruction was first raised, the trial court expressed skepticism of the claim that Victim hit Roberts first, because it was not clear if that happened after Roberts ripped the covers off of Victim, or where it happened in the residence, if not in the bedroom. Roberts argues that this demonstrates error because the "trial court did not refuse the offered instruction because it was defective but rather because it erred in believing there was no[] evidence to support giving it." [Appellant's Brief, p. 17] But, Roberts' contention ignores that after the trial court's expression of skepticism on the issue of who was the initial aggressor, the State argued that not only must there be substantial evidence that Roberts was not the initial aggressor, but also that Roberts was faced with the necessity of defending himself from bodily harm, and used no more force than was necessary. Roberts' only response to this argument was to suggest that the evidence was equivocal that Roberts choked Victim versus simply grabbing her by the throat. This argument did not address the deficiency in the evidence as to whether Roberts faced *any* threat of additional bodily harm warranting the use of force to defend himself, let alone

10

deadly force.   The trial court concluded after these arguments that there was not "enough evidence to support" the tendered self-defense instruction.  This was not error.

For the reasons explained, the trial court did not commit error, plain or otherwise, in refusing to submit the issue of self-defense to the jury.  Points One and Two are denied.

## Conclusion

The trial court's Judgment is affirmed.


_Cynthia L. Martin_____
Cynthia L. Martin, Presiding Judge


All concur

11